BRIAN R. IRVINE, ESQ.
Nevada Bar No. 7758
WAYNE KLOMP, ESQ.
Nevada Bar No. 10109
JONES VARGAS
300 East Second Street, Suite 1510
P.O. Box 281
Reno, NV 89504
Telephone: 775-786-5000
Facsimile: 775-786-1177
Email: birvine@jonesvargas.com
Email: wklomp@jonesvargas.com

Attorneys for Plaintiff
North American Dealer Co-Op.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

NORTH AMERICAN DEALER CO-OP,

Plaintiff,

v.

DICK L. ROTTMAN; JEFFREY P. SHAFFER; JANICE LYNN BOWMAN, CAROL B. INGALLS; BRADLEY A. PEARCE, R. SCOTT ROTTMAN, individuals; A AND H INSURANCE, INC., a Nevada corporation; WESTERN THRIFT & LOAN, a Nevada corporation, and John Does I through XX, Doe Corporations I through XX and Doe Organizations I through XX,

Defendants.

Case No. 3:11-cv-00698-LRH-VPC

**MOTION FOR ORDER TO SHOW CAUSE WHY PREJUDGMENT WRIT OF ATTACHMENT SHOULD NOT ISSUE**

Plaintiff NORTH AMERICAN DEALER CO-OP ("NADC"), moves this court for an order directing defendants to show cause why a prejudgment writ of attachment should not issue. This motion is based on Chapter 31 of the Nevada Revised Statutes, the exhibits and affidavits attached hereto, the pleadings and papers on file herein, and any other evidence the court may wish to consider.

///

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

**I. Introduction**

Defendants are the owners, officers, and/or directors of two insolvent corporations. The insolvent corporations together with their officers, directors and owners, have misappropriated, or allowed the misappropriation of, funds from a fiduciary account which were held in a fiduciary capacity for Plaintiff, NADC, and have wrongfully commingled collateral reserve funds held in a fiduciary capacity on behalf of NADC with other funds. Because of the fraud and embezzlement of Defendants, NADC has suffered damages in an amount of more than $8,000,000 and requests this Court enter an order to show cause why a prejudgment writ of attachment should not issue to attach Defendants' property.

**II. Procedural Background**

NADC filed its complaint with this Court on September 28, 2011 alleging causes of action for breach of fiduciary duty, conversion, embezzlement, fraudulent transfers, fraud, and constructive trust. Defendants are individual officers and directors of various entities all of which are generally under the same ownership and control. Defendants answered the Complaint on November 21, 2011.

**III. Factual Background**

***The Service Program and Agreement between NADC and Western Insurance Co.***

NADC is a cooperative association, consisting principally of automobile dealers located in the United States. Aff. of H. Bailey ("Bailey Aff.") at ¶4, attached hereto as **Exhibit 1**. NADC offers its member dealers an extended service contract reimbursement program (the "Service Program"), which program helps facilitate sales of extended service contracts by the member dealers to their customers who purchase new or used automobiles. Id. at ¶5. The Service Program allows member dealers to sell extended vehicle service contracts to their customers with the option to the customer to obtain a full reimbursement if the policy is unused during the term of the policy. Id.

Pursuant to its obligations under the Service Program, NADC entered into a Vehicle Service Contract Reimbursement Guarantee Performance Contract number WCB211349

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

("Western Bond") with Western Insurance Company ("Western") whereby Western was to, among other things, provide a surety bond to NADC and its member dealers guaranteeing the payment of any money back reimbursements due under the Service Program. Western Bond, attached hereto as **Exhibit 2**.

In connection with the Service Program, the member dealers set aside a "reserve" for each extended service contract which is provided with a money back guarantee. Bailey Aff. at ¶6, **Exhibit 1**. The reserve is intended to pay all future reimbursement claims that may be made against the member dealer. Id. Western agreed to administer and control a member dealer collateral reserve account into which member dealers pay the reserves to cover anticipated reimbursement claims arising under the extended service contract reimbursement program. Service Contract, Endorsement B. NADC, through its administrator, National Administrator Dealer Services, Inc. ("NADS"), provides administrative services to the dealer members in connection with operation of the Program, including, inter alia, maintaining all necessary records, verifying valid claims and submitting approved claims to Western for payment. Bailey Aff. at ¶7, **Exhibit 1**.

Western, based on actuarial considerations, sets the reserve amount payable for each money back guarantee issued and, through its officers and directors, promised to hold the reserves in a fiduciary capacity in a "collateral reserve fund" for NADC and its member dealers. Declaration of R. Rottman, Wash. Sup. Ct. ("Rottman Decl.") at ¶7, attached hereto as **Exhibit 3**. To protect against the possibility that the member dealers' own reserves held in the collateral reserve fund will be insufficient to pay all claims that may be made against outstanding money back guarantees, NADC dealer members are further protected by a surety bond issued by Western. Id. at ¶6. The surety bond issued by Western is intended to pay all valid outstanding reimbursement claims in the event that the collateral reserve fund becomes depleted.

***Collateral Reserve Account***

Access Insurance Services, Inc. ("Access"), a Nevada corporation, served as the managing general agent for Western. Bailey Aff. at ¶8, **Exhibit 1.** Under its authority as managing general

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

agent, Access was responsible for Western's performance under the surety bond and was required, *inter alia*, to manage, administer and protect the collateral reserve account created pursuant to the surety bond. Id. at ¶8; Dick Rottman Sworn Testimony before the Washington State Office of the Insurance Commissioner ("Rottman Testimony"), 79:24 – 80:14, attached hereto as **Exhibit 4**.

The amount of the reserve to be deposited into the collateral reserve account is set by Western. E.g., Notices, attached hereto **Exhibit 5**. The original collateral reserve amount per contract sold with a money back guarantee was initially $60 in accordance with Endorsement A to the Service Agreement, **Exhibit 2**. Thereafter, Western would adjust the collateral reserve amount periodically by written notice to NADC. Notices, **Exhibit 5**.

Concerning the nature of the account and protections the account afforded NADC, Defendants made the following statements:

- The collateral reserve account is closely monitored by Western and Access to ensure that it is adequately funded. Rottman Decl. at ¶8, **Exhibit 3**.

- Reserve funds collected from member dealers by NADC are forwarded to Western and/or Access pursuant to the Western Bond and the parties' agreement. The reserve funds are then retained by Western and/or Access in the collateral reserve account. December 12, 2007 Declaration of Janice Bowman ("Bowman Decl."), Chief Operating Officer and Senior Vice President of Western at ¶4, attached hereto as **Exhibit 6**.

- The collateral reserve account is held by Western and Access in a fiduciary capacity. Rottman Testimony, 82:14-22, **Exhibit 4**.

- The collateral reserve account is segregated in investment and accounting records by Access and the funds held in the collateral reserve account are not available to other creditors even if Western were to file bankruptcy. March 24, 2008 Letter from Access to NADC, attached hereto as **Exhibit 7**.

- NADC and NADS do not have control over, or access to, the funds retained by Western and Access in the collateral reserve account. Bowman Decl. at ¶4, **Exhibit 6**; Rottman Decl. at ¶7, **Exhibit 3**.

Since April 1, 2004, approximately seventeen million dollars in member dealer reserves have been paid to Access on behalf of Western for deposit into the collateral reserve account. Bailey Aff. at ¶9, **Exhibit 1**. From its inception, $9 million has been paid out of the collateral reserve account in payment of reimbursement claims approved by NADS and submitted to Access/Western for payment. Bailey Aff. at ¶9, **Exhibit 1.** As of the date of filing of this Complaint, the collateral reserve account should have a balance of $8,250,000.00. Id.

***Dissolution of Western and Access***

On or about December 23, 2010, Western dissolved its corporate existence in Nevada effective December 31, 2010 without notice to or consultation with NADC or its administrator, NADS. Printout from Nevada Secretary of State, attached hereto as **Exhibit 8.** While Western continues to do business from its same location, using the same name, it has not provided any formal notice or confirmation to NADC or NADS that the Western Bond has been assumed by its successor and will continue to be honored.

Since the date of the dissolution, neither Western nor Access has provided any formal notice or confirmation to NADC or NADS with respect to the current status of the collateral reserve account. Commencing in approximately May 2011 Western started failing to pay out of the collateral reserve account approved reimbursement claims submitted to it by NADC and NADS for payment. Bailey Aff. at ¶10, **Exhibit 1**.

The Utah Department of Insurance, which is now the regulatory body which has authority over Western, commenced an investigation into the solvency of Western. Liquidation Order, Declaration of Insolvency and Restraining Orders dated Sept. 13, 2011, attached hereto as **Exhibit 9**. That investigation resulted in a finding by the Utah Department of Insurance that Western is insolvent and its operations have been taken over by a Liquidator appointed by Utah Department of Insurance. Id. Based on NADC's discussions with the liquidator, it is clear that Western does not have the assets to satisfy even a small fraction of the claims asserted by its creditors, including NADC. Bailey Aff. at ¶10, **Exhibit 1.**

///

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

On or about September 1, 2011, Access filed a Chapter 11 bankruptcy petition in Reno, Nevada. In re Access Ins. Svcs., Inc., Case No. BK-N-11-52830-BTB (D. Nev.). Based upon the information contained in Access's Chapter 11 Petition, it is clear that Access, like Western, does not have the assets to satisfy the claims of its creditors, including NADC.

***Embezzlement and Fraud of Defendants***

Under the terms of the Western Bond, Western is required to make the reimbursement payments out of the collateral reserve account within thirty (30) day of receipt of approved claims with complete documentation. Western Bond § IX(A), **Exhibit 2**. NADS and NADC have submitted more than 1516 approved claims to Western with complete documentation over the last four months, having a claim value of $2,583,386.28. Bailey Aff. at ¶11, **Exhibit 1**. All of these claims are more than 30 days old and are past due. Id.

NADC and NADS continue to administer claims submitted by its member dealers on a regular basis and expect to continue to do so for at least five to six more years. Id. at ¶13. Several written demands, and many oral demands, have been made upon Western and Access that they immediately pay all outstanding reimbursement claims which are more than thirty (30) days old, and that they provide adequate assurances of performance with respect to all other reimbursement claims. Letter to Western and Access from NADC and NADS ("Demand Letter") dated August 5, 2011, attached hereto as **Exhibit 10**.

In addition, the Demand Letter also requested that Western and Access confirm in writing that the collateral reserve account is a separate account held in a fiduciary capacity solely for the benefit of NADC and its member dealers and their customers and that Western and Access have never used any of the funds in the collateral reserve account for any purpose other than claim reimbursements under the Program. Id. The Demand Letter also asks for documentation showing where the collateral reserve account is held and the current balance. Id.

Based upon the testimony of Defendant Jeffrey Shaffer, Executive Vice-President of Access, the collateral reserve account should have at least $8,000,000 deposited. Transcript of Meeting of Creditors, Testimony of J. Shaffer ("Shaffer Testimony"), Oct. 3, 2011, 32:19 – 33:5,

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

attached hereto as **Exhibit 11**. Shaffer testified that $4,000,000 of the money that was to have been held in the collateral reserve account was invested in the now bankrupt Western Insurance at the direction of the CEO of Access, Defendant Dick Rottman. Id. at 33:7 – 35:3. Mr. Shaffer testified that NADC could expect "cents on the dollar" for the $8,000,000 that was to have been held in the collateral reserve account. Id. at 33:19.

It is clear that, based upon the liquidation of Western and bankruptcy of Access that the collateral reserve account has been completely drained of assets. In its bankruptcy filings, Access does not list the collateral reserve account as an asset at all. See In re Access, Case No. 11-52830-btb, Summary of Schedules, Dkt. #20 (Bank. D. Nev.), attached hereto as **Exhibit 23**. Rather, an amount of $6,617,716.50 is listed as a liability to NADC. Id. at 35. The majority of the assets of the now bankrupt Access are held as shares in the other entities and receivable accounts for loans made through Defendant Western Thrift & Loan. Id. at 2-6. In fact, Access apparently purchased $1,000,000 worth of stock in Western Thrift & Loan which then used the money to make loans. Shaffer Testimony at 12:1 – 13:6, **Exhibit 11**. Access also loaned an auto group $2.2 million although where this money came from is uncertain. Id. at 13:16-21. Further, Access also made a loan to one of its officers, Jeff Shaffer. Id. at 16:1-3. In fact, the money was loaned to Shaffer who in turn loaned the money to R. Scott Rottman, another officer of the company. Id.

Based on the representations of the officers and directors of Western and Access, the collateral reserve account is a fiduciary account and should have been held apart from the general funds of the insolvent entities. Now, that money has disappeared due to the acts of the Defendants.

***Relationship of Defendants to Western and Access***

The entities, and relationship of defendants to those entities, are set forth in the summary table below:

///

///

///

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

**Table of Ownership and Control**

| Entity (Corporate Status) | Owners/ Shareholders | Officers and Directors | Supporting Documents |
|---|---|---|---|
| Western Insurance Co.<br>(Liquidation, Utah Insurance Division) | | Janice Bowman<br>Carol Ingalls<br>Bradley Pearce<br>Dick Rottman | NV Secretary of State printout, **Exhibit 8**. |
| Access Insurance Services, Inc.<br>(Bankruptcy, Nevada Bankruptcy Court) | Defendant A & H Insurance<br>(per Shaffer Testimony at 39:22-25, Ex. 11). | Bradley Pearce<br>Dick Rottman<br>R. Scott Rottman<br>Jeffrey Shaffer | NV Secretary of State printout, attached as **Exhibit 12**.<br>Shaffer Testimony 3:22-23, 35:1. |
| A and H Insurance, Inc.<br>(Active Nevada corporation) | Same shareholders as Western Thrift & Loan (per Shaffer Testimony at 41:5-15, Ex. 11) | Bradley Pearce<br>Dick Rottman<br>R. Scott Rottman<br>Jeffrey Shaffer | NV Secretary of State printout, attached as **Exhibit 13**. |
| Western Thrift & Loan<br>(Active Nevada corporation) | Same shareholders as A and H Insurance (per Shaffer Testimony at 41:5-15, Ex. 11) | John R. Blackmon<br>Roberta Pearce<br>Dick Rottman<br>Jeffrey Shaffer | NV Secretary of State printout, attached as **Exhibit 14**. |
| Western Bonding Company<br>(Dissolved Nevada corporation) | Shareholder – A and H Insurance (Shaffer Testimony at 39:18-21, Ex. 11)<br>Shareholder – Access Insurance (Shaffer Testimony at 42:4-6, Ex. 11) | Bradley Pearce<br>Dick Rottman<br>Tammy Love | NV Secretary of State printout, attached as **Exhibit 15**. |
| Western Moana Partners LP<br>(Active Nevada limited partnership) | 15% interest – Access<br>75% interest – Western<br>10% interest – Western Bonding | | NV Secretary of State printout, attached as **Exhibit 16**.<br>Shaffer Testimony at 43:2-7. |
| Western Financial LP<br>(Active Nevada limited partnership) | Bradley Pearce<br>Dick Rottman<br>A and H Insurance | | NV Secretary of State printout, attached as **Exhibit 17**. |

Based upon the table above, what is clear is that these companies are all owned and operated by generally the same individuals. In fact, Shaffer indicates that "They're all – all our

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

companies are related in some way, shape, or form. Specifically not from a stock standpoint, but the owners are similar owners." Shaffer Testimony at 39:18-21, **Exhibit 11**.

***Assets of Defendants***

The Defendants own interest in various real properties or in entities which hold those properties. The list of property and interests for which Plaintiff requests a writ of attachment are as follows:

- North McCarran Property, Reno, Nevada (APN 026-031-41)
  - 50% interest owned by Access (in bankruptcy).
  - 50% interest owned by Western Bonding (wholly owned by Defendant A & H Insurance).
  - Listed for sale at $1.1 million (Shaffer Testimony at 39:14 – 40:8).
  - Taxable value for 2011/2012 fiscal year – $105,300. Washoe County Assessor printout for parcel 026-031-41, attached as **Exhibit 18**.
- 675 West Moana Lane, Reno, Nevada (APN 019-341-03)
  - Owned by Western Moana Partners LP 10% interest by Western Bonding). Washoe County Assessor printout for parcel 019-341-03, attached as **Exhibit 19**.
  - Taxable value for 2011/2012 fiscal year – $2,260,821. Id.
- 3301 S. Virginia St., Reno, Nevada (APN 019-373-08)
  - Owned by Western Financial LP in which Defendants Bradley Pearce, Dick Rottman, and A and H Insurance are the only partners. Washoe County Assessor printout for parcel 019-373-08, attached as **Exhibit 20**.
  - Taxable value for 2011/2012 fiscal year – $1,299,815. Id.
- 450 Anitra Dr., Reno, Nevada (APN 041-290-18)
  - Owned by Defendant Dick Rottman and Jean Rottman.[1] Washoe County Assessor printout for parcel 041-290-18, attached as **Exhibit 21**.

[1] This residence may have been destroyed in the recent fires in Reno. To the extent the house was destroyed, NADC requests the writ of attachment extend to any insurance proceeds.

     - o Taxable value for 2011/2012 fiscal year – $1,552,885. Id.
- o List price – $2,375,000; Estimate – $1,766,200. Zillow.com search results, attached as **Exhibit 22**.

## IV. Legal Analysis

Courts have stated that attachment is a provisional remedy that assists the plaintiff in collecting a money-demand by allowing seizure of property prior to trial and judgment. *See Hamilton Beach Brands, Inc. v Metric and Inch Tools Inc.*, 614 F.Supp.2d 1056, 1060 (C.D. Cal. 2009) (quoting *Kemp Bros. Constr., Inc. v. Titan Elec. Corp.*, 146 Cal. App. 4th 1474, 1476, 53 Cal.Rptr.3d 673 (2007)). The Nevada Supreme Court has stated that when the requested relief includes an accounting or payment, the Nevada attachment statues provide an appropriate and adequate remedy at law. *See Aranoff v. Katleman*, 75 Nev. 424, 433, 345 P.2d 221, 225 (1959). An attachment is considered valid, when it is based on a contract for the direct payment of money and the damages can be ascertained. *Clarence E Morris, Inc. v. Vitek*, 80 Nev. 408, 411, 395 P.2d 521 (1964).

A plaintiff may request a writ of attachment at the time of issuing the summons or any time thereafter. NRS 31.010(1). A prejudgment writ of attachment is appropriate in cases on contract for the direct payment of money. NRS 31.013(1). In order for an ex parte writ of attachment to issue, the plaintiff, or someone on the plaintiff's behalf, must show by affidavit the following:

> a. Set forth clearly the nature of the plaintiff's claim for relief and that the same is valid.
>
> b. Set forth the amount which the affiant believes the plaintiff is entitled to recover from the defendant, and if there is more than one plaintiff or more than one defendant, the amount the affiant believes each plaintiff is entitled to recover or the amount that the plaintiff is entitle to recover from each defendant.
>
> c. Describe in reasonable and clear detail all the facts which show the existence of any one of the grounds for an attachment without notice to the defendant.
>
> d. Describe in reasonable detail the money or property sought to be attached and the location thereof if known.
>
> e. If the property sought to be attached is other than money, set forth to the best knowledge and information of the affiant, the value of such property less any prior liens or encumbrances

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

   f. Name all third persons upon whom a writ of garnishment in aid of the writ of attachment will be served.

g. In an action upon a foreign judgment attach a copy of the judgment to the affidavit for attachment as an exhibit

h. State whether, to the best information and belief of the affiant, the money or property sought to be attached is exempt from execution.

NRS 31.020. However, when the application for a writ of attachment is after notice and a hearing, the affidavit along with additional evidence must meet the requirements set forth above. NRS 31.024. If the affidavit and additional evidence meets the requirements of NRS 31.020, then the court shall issue an order directed to the defendant "to show cause why the order for attachment should not be issued." NRS 31.024. The court **shall** issue an order for attachment if it determines that Plaintiff's claims are "probably valid." NRS 31.026. Further, an affidavit may be based upon a presumption of fraud where the defendant has indicated that has divested himself of assets and will satisfy the judgment at his own convenience. Bowers v. Beck, 2 Nev. 139 (1866).

NADC is entitled to an order to show cause why a prejudgment writ of attachment should not issue because it is likely to succeed on the merits of its claims against Defendants and because there exists a danger that Defendants could continue to transfer and hide their assets.

**1. NADC is likely to prevail on its claim for breach of fiduciary duty.**

A breach of fiduciary duty occurs when defendant owed plaintiff a fiduciary duty, defendant breached that duty, and the plaintiff sustained damages as a result. Mosier v. S. Cal. Physicians Ins. Exch., 74 Cal. Rptr. 2d 550, 565 (Cal. App. 4th 1998). "A fiduciary relationship exists when one has the right to expect trust and confidence in the integrity and fidelity of another." Powers v. United Svcs. Auto. Ass'n, 962 P.2d 596, 602 (Nev. 1998). In Nevada, an insurer owes a fiduciary obligation to its insured. Id. at 602-03.

Here, the Individual Defendants were the officers and directors of Western, with whom NADC contracted to provide insurance services, and Access, Western's managing general agent. Access, on behalf of Western, held the collateral reserve account in a fiduciary capacity, as represented to NADC by the Individual Defendants. By Defendants' admissions, the collateral reserve account was a trust account, held in a fiduciary capacity for NADC, and was to be

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

segregated from the general fund and held for the benefit of the insureds even in the event of a bankruptcy. Additionally, that account should currently hold approximately $8 million.

Despite these numerous representations of the Individual Defendants to NADC, at least $4 million of the collateral reserve account was used to purchase Western stock at the direction of Dick Rottman. The Defendants have made it clear remainder of the funds have also disappeared and are no longer available to NADC to pay claims as they arise. Currently, more than $1.5 million has been claimed against the collateral reserve account but not paid. Defendant Shaffer, as a representative of Access, testified that NADC could expect to recover only "cents on the dollar" for the $8 million that should be in a segregated, fiduciary trust account.

The Individual Defendants owed a fiduciary obligation to NADC as officers and directors of Western Insurance Company and its managing general agent, Access. NADC had the right to expect trust and confidence in the officers and directors of the entities holding the collateral reserve account which, by their own admission, was a fiduciary account.

Because of the misrepresentations of the Individual Defendants regarding the nature and amount of the collateral reserve account, and because of the Individual Defendants' actions in liquidating the collateral reserve account, NADC has sustained more than $1.5 million in damages in the amount currently past due and the $8 million from the collateral reserve account used in part to purchase Western stock. NADC will continue to suffer damages as more claims are asserted against the collateral reserve account. It was the Individual Defendant's decision to transfer the funds away from the collateral reserve account to the other institutional Defendants they own and control.

**2. NADC is likely to prevail on its claim for conversion.**

Conversion occurs when a defendant makes wrongful act of dominion over another's personal property which is inconsistent with the plaintiff's rights or interest in the property. Evans v. Dean Witter Reynolds, Inc., 5 P.3d 1043, 1048 (2000). Conversion is an act of general intent which does not require a showing of wrongful intent and is not excused by good faith. Id. Conversion occurs when a defendant seriously interferes with a party's rights to property. Bader

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

v. Cerri, 609 P.2d 314, 317 (1980). When conversion occurs, a plaintiff "should receive full compensation for his actual losses." Id.

The collateral reserve account was held by Access as a fiduciary account which was to be available regardless of any bankruptcy. However, Defendants misappropriated those funds which were held in trust and that money is now no longer available to NADC. Testimony offered by the Defendants suggests that this money was transferred to Western Insurance and to Defendant Western Thrift & Loan. At least $4 million was used, not for the intended purpose of paying claims, but to purchase Western Insurance stock, an entity which was dissolved in Nevada and reformed in Utah only to go into liquidation as ordered by the Utah Department of Insurance.

Not only did the Individual Defendants order the conversion of the funds, they used the Institutional Defendants to complete the conversion. As a result, NADC has suffered damages of at least the $1.5 million which is well over 30 days past due plus the $4 million that was used to purchase Western stock.

**3. NADC is likely to prevail on its claim for fraud based on misrepresentation.**

Fraudulent or intentional misrepresentation occurs when: (1) a defendant makes a false representation; (2) the defendant knew or should have known that the representation was false; (3) the defendant, in making the representation, intended to induce another to act or refrain from acting; (4) the plaintiff acted upon the representation and the plaintiff's reliance was justified; and (5) the plaintiff suffers damages as a result. Barmettler v. Reno Air, Inc., 114 Nev. 441, 449, 956 P.2d 1382, 1387 (1998).

Defendants represented to NADC that the money paid by NADC would be held in a collateral reserve account which NADC could not access and which was segregated from other monies. Specifically, that representation was made to Hank Bailey to induce NADC to enter into the contract with Western. Further, the representations regarding the character and fiduciary nature of the collateral reserve account was made by Defendants Linda Bowman, Dick Rottman, and Jeffrey Shaffer. Defendants also represented that the money would be available regardless of any insolvency of Western or Access because of the nature of the account.

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

The representations made by the Defendants regarding the collateral reserve account were demonstrably false and were known to be false when made. The money was, according to the testimony of Shaffer, never in a segregated, fiduciary account and was used to fund the business of Western and Access. Rather, the money was held in the general account and transferred between the entities controlled by the Individual Defendants.

Justifiably, NADC relied on the representations of the Defendants and left the collateral reserve account in their care. Based upon the representations, NADC was justified in its actions of leaving the collateral reserve account Defendants' control. As a result of the misrepresentations, at least $5.5 million has been lost ($1.5 in past due claims and $4 million transferred from the collateral reserve account to Western) and it is expected that NADC will receive only "cents on the dollar" for the remaining amount of the $8.2 million that was to have been in the account. Therefore, as a result of Defendants' fraud, NADC has suffered damages in the amount of at least $5.5 million with additional damages to be proven at the time of trial.

**V. NADC has met its burden and is entitled to an order to show cause why a prejudgment writ of attachment.**

NADC has set forth in detail the statutorily required elements for an order to show cause why a prejudgment writ of attachment should not issue and NADC is entitled to a writ of attachment. Those requirements, as set forth in NRS 31.020, have been met by this motion, the attached affidavit and exhibits.

NADC's claims for conversion, fraud, and breach of fiduciary duty are clearly set forth and the undisputed facts support each of the claims. There is no question that the Defendants owed NADC a fiduciary obligation and breached that obligation by converting the funds which were to be held in the collateral reserve account, a fiduciary trust account. Defendants cannot raise a legitimate defense—they were responsible for and the funds which are no longer in the account as promised. NADC is likely to succeed on the merits of its case.

Further, NADC is likely to receive a judgment in the full amount of money which should be in the collateral reserve account, $8.2 million. NADC has set forth the explicit property to be attached and, although the amount from the property to be attached is not likely worth the full

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

amount of the amount due to NADC, the specific property to be attached and its value as stated by the Washoe County Assessor's office is set forth herein.

Finally, NADC requests that the writ of attachment be issued in the name of each of the Defendants to be served upon and filed with the Washoe County Recorder and, to the extent any cash insurance proceeds are due and owing, to the insurer of Dick Rottman's residence.

**VI. Conclusion**

At a minimum, this Court should issue an order to show cause why a prejudgment writ of attachment should not issue. Plaintiff is likely to succeed on its claims and has attached evidence to that effect. Defendants should be ordered to appear and show cause why a prejudgment writ should not issue.

DATED this 23rd day of November, 2011.

JONES VARGAS

/s/ Wayne Klomp

BRIAN R. IRVINE, ESQ,
WAYNE KLOMP, ESQ.
300 East Second Street, Suite 1510
P.O. Box 281
Reno, NV 89504
Telephone: 775-786-5000
Facsimile: 775-786-1177
Email: birvine@jonesvargas.com
Email: wklomp@jonesvargas.com

*Attorneys for Plaintiff,*
*North American Dealer Co-Op.*

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

**Table of Exhibits**

| Exhibit Number | Description of Exhibit |
|---|---|
| 1 | Affidavit of Hank Bailey in support of Motion for Order to Show Cause |
| 2 | Vehicle Service Contract Reimbursement Guarantee Performance Contract number WCB211349 ("Western Bond") |
| 3 | Declaration of Dick L. Rottman in Support of Motion for Stay, Washington Superior Court ("Rottman Decl.") |
| 4 | Dick Rottman Sworn Testimony before the Washington State Office of the Insurance Commissioner ("Rottman Testimony") |
| 5 | Notices of Increase to Collateral Reserve Account |
| 6 | December 12, 2007 Declaration of Janice Bowman, Office Washington State Insurance Commissioner ("Bowman Decl.") |
| 7 | March 24, 2008 Letter from Access to NADC |
| 8 | Printout from Nevada Secretary of State regarding corporate status of Western Insurance Company |
| 9 | Liquidation Order, Declaration of Insolvency and Restraining Orders dated Sept. 13, 2011 |
| 10 | Letter to Western and Access from NADC and NADS ("Demand Letter") dated August 5, 2011 |
| 11 | Transcript of Meeting of Creditors, Testimony of J. Shaffer ("Shaffer Testimony"), Oct. 3, 2011 |
| 12 | NV Secretary of State printout – Access Insurance Services, Inc. |
| 13 | NV Secretary of State printout – A and H Insurance, Inc. |
| 14 | NV Secretary of State printout – Western Thrift & Loan |
| 15 | NV Secretary of State printout – Western Bonding Company |
| 16 | NV Secretary of State printout – Western Moana Partners LP |
| 17 | NV Secretary of State printout – Western Financial LP |
| 18 | Washoe County Assessor printout for parcel 026-031-41 |
| 19 | Washoe County Assessor printout for parcel 019-341-03 |
| 20 | Washoe County Assessor printout for parcel 019-373-08 |
| 21 | Washoe County Assessor printout for parcel 041-290-18 |
| 22 | Zillow.com search results for 450 Anitra Dr., Reno, Nevada |
| 23 | In re Access, Case No. 11-52830-btb, Summary of Schedules, Dkt. #20 (Bank. D. Nev.) |
| 24 | Affidavit of Wayne Klomp in support of Motion for Order to Show Cause |

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000 Fax: (775) 786-1177

**CERTIFICATE OF SERVICE**

I certify that I am an employee of JONES VARGAS, and that on this date, pursuant to FRCP 5 (b), I am serving a true and correct copy of the attached **MOTION FOR ORDER TO SHOW CAUSE WHY PREJUDGMENT WRIT OF ATTACHMENT SHOULD NOT ISSUE** on the party(s) set forth below by:

________ Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices

________ Certified Mail, Return Receipt Requested

________ Via Facsimile (Fax)

________ Placing an original or true copy thereof in a sealed envelope and causing the same to be personally Hand Delivered

________ Federal Express (or other overnight delivery)

___XX__ By Notice of Electronic Filing via the CM/ECF system as maintained by the Court Clerk's Office

as follows:

Richard L. Elmore: relmore@hollandhart.com; btoriyama@hollandhart.com; carnold@hollandhart.com cpulsipher@hollandhart.com; gsilva@hollandhart.com; jnickerson@hollandhart.com; k_oriley@hollandhart.com; lgray@hollandhart.com; renofedecf@hollandhart.com

DATED this 23rd day of November, 2011.

/s/ Michell L. Nobach
An employee of JONES VARGAS