Richard L. Elmore, Esq. NSB #1405
J. Robert Smith, Esq. NSB
Tamara Reid, Esq. NSB #9840
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, NV  89511
775-327-3000; 775-786-6179 (fax)
relmore@hollandhart.com
jrsmith@hollandhart.com
treid@hollandhart.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NORTH AMERICAN DEALER CO-OP. | Case No. 3:11-cv-00698-RCJ-VPC |
| Plaintiff, | |
| vs. | |
| DICK L. ROTTMAN; JEFFREY P. SHAFFER; JANICE LYNN BOWMAN, CAROL B. INGALLS; BRADLEY A. PEARCE, R. SCOTT ROTTMAN, Individuals; A AND H INSURANCE , INC., a Nevada corporation; WESTERN THRIFT & LOAN, a Nevada corporation, and John Does I through XX and Doe Organizations I through XX, | |
| Defendants. | |

**OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE WHY PREJUDGMENT WRIT OF ATTACHMENT SHOULD NOT ISSUE**

Defendants DICK L. ROTTMAN, JEFFREY P. SHAFFER, JANICE LYNN BOWMAN, CAROL B. INGALLS, BRADLEY A. PEARCE, R. SCOTT ROTTMAN, A & H INSURANCE, INC., and WESTERN THRIFT & LOAN (hereafter collectively referred to as "Defendants"), by and through their counsel, Holland & Hart LLP, hereby oppose the Motion for Order to Show Cause Why Prejudgment Writ of Attachment Should Not Issue ("Motion") filed by Plaintiff, North American Dealer Co-Op ("North American").  This Opposition is based on the following memorandum of points and authorities.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

A prejudgment writ of attachment is an extraordinarily harsh remedy that should rarely be granted. In this case, the Court should reject North American's request for a prejudgment writ of attachment because North American has alleged nothing but tort claims against Defendants and the applicable Nevada statute does not permit the issuance of a prejudgment writ of attachment in non-contract actions. Moreover, North American has not established the existence of any extraordinary circumstances, by affidavit or otherwise, to justify this severe remedy. As will be demonstrated fully below, Defendants have meritorious defenses to North American's conclusory and factually weak claims for relief, which only further eviscerates the basis for the issuance of a prejudgment writ of attachment. Finally, North American seeks relief from this Court but fails to state that it will post the requisite statutory bond to protect Defendants from wrongful attachment.

Ultimately, North American's request for a prejudgment writ of attachment is placing the cart before the horse. North American simply does not qualify for relief under the attachment statute. The Court should accordingly deny the Motion so that this matter may proceed to the merits in an orderly manner.

## II. RELEVANT FACTUAL BACKGROUND

This case is about a contractual relationship between North American and a third-party that is not named in this case, Western Insurance Company ("Western"). Specifically, North American's allegations center on its contractual relationship and business dealings with Western and Western's managing general agent, Access Insurance Services, Inc. ("Access") over a period of years. Neither Western nor Access is named as a defendant in this lawsuit.

The factual allegations that describe North American's relationship with Western as set forth in the First Amended Complaint ("FAC") are relatively straightforward. [Doc. 22]. North American is a cooperative association of automobile dealers in the United States. FAC at ¶14. North American offers its members an extended service contract reimbursement program, which in turn facilitates the sale of extended service contracts by members to their customers who

purchase new or used automobiles. FAC at ¶15. North American entered into a contract with Western, whereby Western was to provide a surety bond to North American with respect to the program. FAC at ¶¶17, 24. Notably, the contract was solely between North American and Western. North American had no contractual relationship with any of the named individual defendants in this case (collectively referred to herein as the "Individual Defendants"), nor with the corporate defendants A & H Insurance, Inc. ("A & H") or Western Thrift & Loan ("Western Thrift").

North American makes a number of factual allegations regarding the scope of its contractual relationship with Western and Western's purported obligations pursuant to the surety bond issued to North American. North American also makes a number of factual allegations about Access, and its role in managing a "collateral reserve account." FAC at ¶28, 34. The crux of North American's allegations center around Western's and Access' control of the collateral reserve account, the monies paid into the account and monies disbursed from the account over a period of several years. FAC at ¶¶37-41. Such factual allegations do not involve the Defendants in the present action.

It is undisputed that in late 2010, Western dissolved its corporate existence in Nevada and reincorporated in the State of Utah. FAC at ¶46. In 2011, Western had financial difficulties, which ultimately lead to insolvency proceedings with the Utah Department of Insurance. FAC at ¶¶68-69. It is also undisputed that Access filed bankruptcy in the United States Bankruptcy Court for the District of Nevada on or about September 1, 2011. FAC at ¶70. Importantly, this Court should note that North American is pursuing separate and concurrent proceedings against Access in Bankruptcy Court. *See* Complaint in BK-N-11-52830-BTB (without exhibits), attached hereto as **Exhibit 1**. Upon information and belief, North American further has the ability to file a claim with the Utah Department of Insurance until March 2012 if it seeks to claim a recovery from Western.

The Individual Defendants in this lawsuit are current and former officers and directors of Western and Access, some of whom are also the directors and officers of the two corporate defendants, A and H and Western Thrift. *See* Declaration of Jeff Shaffer, attached hereto as

**Exhibit 2** and Declaration of Bradley Pearce attached hereto as **Exhibit 3**. Neither A & H nor Western Thrift has had any direct dealings with North American or any of its representatives. *See id.* Similarly, several of the individually-named defendants, including Janice Bowman, Carol Ingalls, Bradley Pearce and Scott Rottman have had no interactions with North American or any of its representatives. *See* Exhibit 3; *see also* Declaration of Carol Ingalls attached hereto as **Exhibit 4**.

The sole factual allegations against the Defendants in the FAC are the following three conclusory, and redundant, allegations:

> On information and belief, Western and Access, together with their officers, directors and owners, have misappropriated, or allowed the misappropriation of, funds from the collateral reserve account, which were held by Western and/or Access in a fiduciary capacity for [North American], and have wrongfully commingled the collateral reserve funds with other funds.
>
> [North American] is informed and believes that the Individual Defendants have improperly and illegally, without the knowledge or consent of [North American], taken the funds that were held in a fiduciary capacity in the collateral reserve account, and misappropriated said funds for the benefit of Defendants and/or entities or organizations owned and controlled by Defendants.
>
> [North American] is informed and believes that some of the funds that were held in a fiduciary capacity in the collateral reserve account, which the Individual Defendants improperly and illegally misappropriated, without the knowledge or consent of [North American] were transferred to Defendant A AND H INSURANCE, INC. ("A & H") and to Defendants WESTERN THRIFT & LOAN ("Western Thrift").

*See* FAC at ¶¶71, 73-74. The foregoing allegations make clear that North American has no facts to link the Individual Defendants, A&H or Western Thrift to any of the alleged actions of Western and Access with respect to the collateral reserve account that is at the crux of North American's complaint. Nevertheless, North American is forging ahead with what is clearly a fishing expedition against these Defendants, based merely on its own unfounded suspicions.

Entirely absent from the FAC are any specific allegations regarding Defendants' involvement with North American, Western or Access. Also absent from the FAC is any factual basis to justify why these Defendants, who already have a tenuous connection to the underlying dispute between North American and Western/Access, should be subjected to such a harsh remedy as a prejudgment writ of attachment based solely on North American's conspiracy theory

as to what happened behind the scenes.

## III. LEGAL ARGUMENT

### A. Legal Standard

Attachment is generally recognized as "a harsh remedy because it causes the defendant to lose control of his property before the plaintiff's claim is adjudicated." *Blastrac v. Concrete Solutions & Supply*, 678 F. Supp. 2d 1001, 1004 (C.D. Cal. 2010) (internal citation omitted); *O'Neil v. NY Silver Peak Mining Co.*, 3 Nev. 141 (1867); *Paul H. Aschkar & Co. v. Curtis*, 327 F.2d 306, 209, n.11 (9th Cir. 1964); *Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1056, 1060 (C.D. Cal. 2009). Thus, attachment statutes require a strict interpretation. *See Blastrac*, 678 F. Supp. 2d at 1001.

The applicable Nevada statute governing North American's Motion is NRS 31.013, which provides that a writ of attachment may only issue in certain, enumerated types of cases, namely:

> 1. In an action upon a judgment **or upon a contract, express or implied, for the direct payment of money**:
>
> (a) If the judgment is not a lien upon or the contract is not secured by mortgage, lien or pledge upon real or personal property situated in this state; or
>
> (b) If such lien or security has, without any act of the plaintiff or the person to whom the security was given, become valueless or insufficient in value to secure the sum due the plaintiff, in which case the attachment shall issue only for the unsecured portion of the amount due the plaintiff, which is equal to the excess of the amount due the plaintiff above the value of the security.
>
> 2. In any case where the attachment of the property of the defendant is allowed pursuant to this chapter or other provision of law.
>
> 3. In any other case where the court finds that **extraordinary circumstances exist** which will make it improbable for the plaintiff to reach the property of the defendant by execution after the judgment has been entered.

(emphasis added).

This Court should deny North American's Motion because Nevada's statutes do not contemplate the issuance of writs of attachment in tort-based actions. Furthermore, North American has not alleged any "extraordinary circumstances" justifying such a harsh pre-judgment remedy against Defendants. In addition, Defendants have meritorious defenses against

North American's claims for relief including its attempt to pierce the corporate veil in order to saddle the officers and directors of Western and Access with individual liability. Finally, North American makes no mention of the explicit requirement that it posts security for any writ of attachment that may, but should not, be issued.

### B. A Writ of Attachment Is Not An Available Remedy In Nevada Tort Actions.

North American appears to rely on NRS 31.013(1) as grounds for issuance of a prejudgment writ of attachment. But based on the plain language of the statute, Nevada does not contemplate the issuance of a prejudgment writ of attachment in non-contract actions. Here, North American's action is based purely on tort-based claims for relief. This Court should not construe Nevada's prejudgment attachment statute to encompass actions that go far beyond its plain language.

Several jurisdictions have reasoned that a prejudgment writ of attachment statute should not be expanded to include actions sounding purely in tort when the statute plainly refers to express or implied contracts for the direct payment of money. For example, the Tenth Circuit Court of Appeals reasoned that "[a]n attachment statute will not be construed to cover claims arising [in tort], unless it clearly appears from the language of the statute that the legislature intended to extend the remedy to such claims." *Investors Royalty Co. v. Market Trend Survey, Inc.*, 206 F.2d 108, 110 (10th Cir. 1953), cert. denied, 346 U.S. 909, 74 S. Ct. 239, 98 L. Ed. 406 (1953); *see also Stotland v. Mobile Homes Engineering Corp.*, 17 Cal.Rptr. 591 (Cal. App. 1961) (complaint, which did not seek or plead rescission of purchase contract or seek recovery of money paid to sellers, did not allege implied contract for direct payment of money but alleged action for fraud and deceit based on sellers' asserted misrepresentations as to their engagements with third party, and, therefore, attachment could not issue thereon); *Crist v. United Underwriters, Ltd.*, 343 F.2d 902, 904 (Colo. App. 1965) (Colorado rule providing for writs in actions on contract, express or implied, cannot be applied to a tort action unless there is a clear indication that it includes such actions).

The language of NRS 31.013(1) could not be clearer when it refers to actions arising "upon a contract, express or implied, for the direct payment of money." Although North

American could argue that it potentially has such claims against Western and/or Access, neither of these entities are defendants in this lawsuit and North American is already separately pursuing actions arising out its contractual relationship against Western and Access.  This lawsuit is something separate altogether and alleges purely tort-based claims for relief that purportedly arise out of the Individual Defendants' roles as officers and directors of Western and Access or as a related entity.  In light of the complete absence of any contractually-based claim for relief in this lawsuit, this Court should not hesitate to reject North American's request for a prejudgment writ of attachment pursuant to NRS 31.013(1).

### C. North American Has Failed To Demonstrate Any Extraordinary Circumstances to Justify Prejudgment Attachment of Defendants' Assets.

Although North American fails to raise NRS 31.013(3) as an alternative ground for its request for a prejudgment writ of attachment, Defendants will nevertheless address this argument now in an effort to preclude North American from raising such a belated argument in its reply brief.  NRS 31.013(3) provides that a prejudgment writ of attachment may issue "[i]n any other case where the court finds that extraordinary circumstances exist which will make it improbable for the plaintiff to reach the property of the defendant by execution after the judgment has been entered."  North American has not only failed to specifically cite to this provision, but has entirely failed to demonstrate the existence of any such extraordinary circumstances to warrant the severe remedy it seeks.

North American relies exclusively on its conclusory and totally unsubstantiated allegations that Defendants have "improperly and illegally, without the knowledge or consent of[North American], taken funds that were held in a fiduciary capacity in the collateral reserve account, and misappropriated said funds for the benefit of Defendants and/or entities or organizations owned and controlled by Defendants."  FAC ¶73.  North American alleges no nexus between the insolvency of Western and the bankruptcy filing of Access and the Defendants, other than the fact that there is a commonality of ownership between the corporate entities. This is insufficient to warrant the issuance of a prejudgment writ of attachment.

The Nevada Supreme Court has held that an attachment will not issue on the basis of the

movant's conclusory statements. *See Paramount Ins., Inc. v. Rayson & Smitley*, 86 Nev. 644, 650, 472 P.2d 530, 534 (1970) (holding "that an affidavit seeking issuance of a writ of attachment in a judicial foreclosure proceeding must not be merely conclusory"); NRS 31.020(1)(c) (movant's affidavit must describe in "reasonable and clear detail all the facts" demonstrating its basis for attachment).

Wholly absent from North American's Motion is any evidence that the prejudgment attachment of Defendants' property is at all necessary in this case. For instance, North American has not alleged or demonstrated that Defendants represent a flight risk or that they have fraudulently conveyed assets in order to insulate themselves from creditors in the past. *See, e.g., Shah v. Commercial Bank "Ob'Edinennyi Investitsionnyi Bank*, No. 09 CV 6121(HB), 2010 WL 743043 *3 (S.D.N.Y. March 4, 2010) ("[C]ourts have declined to order an attachment where Petitioner fails to show that Respondent may spirit away the money or simply lacks sufficient assets and may have not money when the award is rendered). Rather, the Defendants are individuals and entities that are firmly rooted in the Reno community, have no intentions of leaving Nevada, and are financially solvent. More importantly, the property that North American seeks to attach is several pieces of real property located in Washoe County, Nevada. *See* Motion, at p. 9-10. The fact that the property is all located within Washoe County, and that only one property is currently listed for sale, only further weakens the basis for North American's premature request to attach Defendants' property in this case.

Accordingly, the Court should deny North American's request for the provisional and extraordinary remedy of prejudgment attachment because North American has failed to show that this case presents extraordinary circumstances justifying a prejudgment writ of attachment.

D. <u>Defendants Have Meritorious Defenses to North American's Claims.</u>

North American's FAC, filed on December 1, 2011, asserts eight claims for relief including (1) breach of fiduciary duty against the Individual Defendants; (2) conversion against the Individual Defendants; (3) embezzlement under NRS 683A.400 against Defendants Rottman and Shaffer; (4) fraudulent transfers against all Defendants; (5) fraud against the Individual Defendants; (6) constructive trust against all Defendants; (7) negligent misrepresentation against

Page 8 of 20

the Individual Defendants; and (8) civil conspiracy against the Individual Defendants.

Each of the foregoing claims – except for constructive trust – is premised upon North American's ability to pierce the corporate veil of both Western and Access, in order to assert these claims against the Individual Defendants. As is set forth fully below, North American has insufficiently stated a basis for this Court to disregard the corporate entities of both Western and Access. In addition, and even if North American could plead sufficient facts to justify piercing the corporate veil, its FAC and the supporting declaration of Hank Bailey are devoid of specific factual allegations against each of the Defendants to support any of the foregoing claims for relief.

*i. North American's Attempt to Pierce the Corporate Veil Is Baseless.*

Veil piercing is a narrow exception to the doctrine of limited liability for corporate entities; thus, veil piercing should be permitted only under extraordinary circumstances. *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996). Where a claim to pierce the corporate veil is based on allegations of fraud, FRCP 9(b)'s heightened pleading standard applies. *Se. Texas Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006). However, even where veil piercing is not based upon allegations of fraud, "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard [under FRCP 8]." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005). Rather, "[the plaintiff must] allege sufficient *facts* to support an inference that [a party] has so dominated and disregarded [the corporate] form that [it] is in fact an alter ego." *Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 54 (S.D.N.Y. 2009); *see also De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss).

The elements for piercing the corporate veil are as follows:

> (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction [a] fraud or promote injustice.

*LFC Mkg. Group, Inc. v. Loomis,* 116 Nev. 896, 904, 8 P.3d 841, 846-47 (2000). In addition to the requirement that the financial structure of the corporation is a sham, the following factors may indicate the existence of an alter ego relationship: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities. *Id.* at 904, 847.

Here, North American has not specifically plead an alter ego claim against the Individual Defendants, but has nevertheless included factual allegations that mirror the elements of such a claim in an effort to impose individual liability on the officers and directors of Western and Access. But North American's factual allegations, are at best, a mechanical recitations of the elements required to pierce the corporate veil. They read as follows:

> NADC is informed and believes that the Individual Defendants are and were at all times pertinent hereto, the officers, directors, shareholders and/or owners of both A & H and Western Thrift.
>
> NADC is informed and believes that Western and/or Access were used by the Defendants as a pass-through shell for each Defendant's individual benefit.
>
> NADC is informed and believes that Western and/or Access was deliberately undercapitalized and has been since its formation.
>
> NADC is informed and believes that Western and/or Access is influenced and governed by the Defendants such that there is a unity of interest and ownership as to Western and/or Access such that each such entity is inseparable from the Defendants.
>
> Adherence to the fiction of Western and/or Access as a separate legal entity from the Defendants would, under the circumstances, sanction a fraud or promote injustice. The Defendants have total control over Western and/or Access.

*See* Complaint at ¶75, 76, 77, 78 and 80. These conclusory and unsupported statements constitute only a recitation of the bare bones elements and legal conclusions of alter ego liability. Further, these statements are made only upon information and belief, and thus cannot support North American's alter ego theory. *See N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 2009 WL 1513389, *9 (M.D. Fla. 2009) (dismissing alter ego claim where plaintiff alleged upon information and belief that there was commingling of funds and unity of ownership); *Taberna Capital Mgmt., LLC v. Dunmore*, 2009 WL 2850685 (S.D.N.Y. 2009) (formulaic recitations of alter ego elements upon information and belief could not survive motion to dismiss); *see also*

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (even if individual was entitled to all of company's profits and dominated or controlled those companies, such allegations were insufficient to hold individual personally liable for actions of company). Tellingly, North American presents no factual allegations to support these statements, which cannot satisfy the heightened requirements of Rule 9(b), which apply as North American has alleged fraud against the individual Defendants.

Ultimately, what will become apparent in this case is that North American is seeking to recover against Defendants what it fears it may not be able to recover against Western or Access in separate proceedings it is pursuing, or may choose to pursue, against those entities. Just because these companies have hit hard financial times, however, does not automatically mean that its officers and directors are liable individually and can be so lightly accused of fraud and embezzlement by North American based on nothing but a suspicion. In *Paul Steelman, Ltd. v. Omni Realty Partners*, 110 Nev. 1223, 885 P.2d 549 (1994), the Nevada Supreme Court recognized this exact conundrum that a party such as North American may find itself in. In that case, the plaintiff – Paul Steelman, Ltd. – also attempted to pierce the corporate veil and impose liability on the officers and directors of a corporation. 110 Nev. at 1125, 885 P.2d at 550. The Supreme Court affirmed the lower court's finding that the attempt was unjustified, reasoning that "[t]he fact that Steelman will not be fully paid does not automatically create an 'injustice.'" 110 Nev. at 1126, 885 P.2d at 551. Moreover, the Court noted that "[i]t is unfortunate that Steelman's recovery is limited to the assets of two insolvent entities; but Steelman alone is responsible for not protecting against the eventuality that occurred by insisting on individual guarantees from shareholders who were financially capable of satisfying its claims [against the insolvent company]." *Id*.

In light of the foregoing, all of North American's claims against the Individual Defendants are likely to fail as a matter of law because North American will be unable to establish a sufficient basis for piercing the corporate veil. This Court may accordingly conclude that North American is unlikely to prevail on the merits of its case against Defendants.

///

### ii. North American Has No Basis to Assert a Claim for Breach of Fiduciary Duty Against the Individual Defendants.

Under Nevada law, a "fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Stalk v. Mushkin*, 125 Nev. 21, 28, 199 P.3d 838, 843 (2009) citing Restatement (Second) of Torts § 874 cmt. a (1979). "Thus, a breach of fiduciary duty claim seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship." *Id*.

Without any factual allegations to describe the relationship between the Individual Defendants and North American, or any legal authority to support its proposition, North American alleges in its FAC that the "Individual Defendants owed a fiduciary obligation to [North American] as officers and directors of Western Insurance Company and its managing general agent, Access. [North American] had the right to expect trust and confidence in the officers and directors of the entities holding the collateral reserve account which, by their own admission, was a fiduciary account." *See* Motion, at p. 12: 10-13. However, as the factual allegations of the FAC make clear, the only relationship that existed was a contractual relationship between North American and Western. As such, any claim of a fiduciary duty – if one were to exist – would be solely between North American and Western.[1] To claim that Western's current and former officers and directors owed some type of separate, actionable fiduciary duty to North American is unsupportable under the law.

### iii. The Conversion and Embezzlement Claims Are Conclusory and Redundant.

For its conversion claim for relief, North American claims that "the Individual Defendants converted and misappropriated funds in the collateral reserve account, taking such funds for the Individual Defendants' personal benefit without the knowledge or consent of [North American]." FAC at ¶96. Similarly, North American's third claim for relief

---

[1] Even a claim of a fiduciary relationship between North American and Western is tenuous, at best, in light of the fact that the relationship was solely a contractual one and involved arms' length negotiations between two sophisticated entities.

Page 12 of 20

(embezzlement) is brought under NRS 683A.400, and claims that "Western and Access, at the direction of [Rottman and Shaffer], diverted or misappropriated funds from the collateral reserve account." FAC at ¶111. In relevant part, NRS 683A.400(1) provides that "[a]ll money of others received by any person in any way licensed or acting as a producer of insurance, . . . under any insurance policy or undertaking of bail is received and held by the person in a fiduciary capacity. Any such person who diverts or appropriates such fiduciary money to his or her own use is guilty of embezzlement." North American is unlikely to prevail on either of these claims for relief because both claims are plead in a conclusory fashion, without any supporting factual allegations of specific wrongful conduct by any of the Individual Defendants.

Both the conversion and embezzlement claim require that the specific monies are delivered to the charged party for safekeeping and that the charged party has an obligation to treat such monies in a particular manner. *Brown ex rel. Richards v. Brown*, 239 P.3d 602 (Wash. Ct. App. Div. 1 2010) (money may become the subject of conversion, but only if the party charged with conversion wrongfully received the money, or if that party had an obligation to return the money to the party claiming it); *ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc*., 390 F. Supp. 2d 212 (E.D. N.Y. 2005) (An action will lie under New York law for conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question and that money is specifically identifiable); *Taylor Pipeline Const., Inc. v. Directional Road Boring, Inc*., 438 F. Supp. 2d 696 (E.D. Tex. 2006) (Under Texas law, money can be the subject of conversion, but only when it is in the form of specific chattel, such as old coins, or when the money is delivered to another party for safekeeping, the keeper claims no title, and the money is required and intended to be segregated, either substantially in the form in which it was received or as an intact fund).

Here, North American has solely alleged that it delivered money to Western and/or Access, <u>not</u> to any of the Individual Defendants, and further claims that Western and/or Access – not any of the Individual Defendants – had a duty to maintain the collateral reserve funds in a particular manner. There is not a single factual allegation showing a separate agreement by any of the Individual Defendants to maintain these funds on behalf of North American. As already

set forth above, North American should not be permitted to freely pursue the officers and directors of these corporations for such egregious claims such as conversion and embezzlement without even a single factual allegation to tie these individuals to any wrongdoing.  This Court should therefore conclude that for purposes of issuing a prejudgment writ of attachment, North American is not likely to prevail on these claims for relief.

*iv.  The Fraudulent Transfer Claim Is Inapplicable As A Matter of Law.*

North American's fraudulent transfer claim is governed by the Uniform Fraudulent Transfer Act, codified in NRS Chapter 112.  "The UFTA is designed to prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." *Herup v. First Boston Financial, LLC*, 123 Nev. 228, 232, 162 P.3d 870, 872 (2007).  Here, North American's claim fails as a matter of law because Defendants cannot be considered "debtors" liable on a "claim" to North American within the meaning of the UFTA.  *See* NRS 112.150.  This is because while North American may attempt to argue that Western (and perhaps Access) were liable for fulfilling obligations on the surety bond, the same cannot be said of the Individual Defendants, none of whom personally guaranteed performance to North American.  Again, North American is improperly attempting to bypass the corporate form of both Western and Access to expose the Individual Defendants to liability when it has not basis to do so.  Similarly, neither A&H nor Western Thrift can be liable for fraudulent transfer because these are separate corporate entities from Western and Access, and were not involved in any way in the contractual relationship between North American and Western.

*v.  North American Will Be Unable to Sustain Its Fraud and Negligent Misrepresentation Claims for Relief.*

North American alleges fraud by the Individual Defendants as its fifth claim for relief.  As with many of its remaining claims for relief, this claims is plead in a completely conclusory fashion, let alone with the required specificity for fraud allegations.

Fed. R. Civ. P. 9(b) and NRCP 9(b) both provide that all averments of fraud must be plead with particularity.  To allege an averment of fraud with the requisite particularity, a complaint must include an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v.*

Page 14 of 20

*KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong"); *see also Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (citing *In re Glenfed Sec. Litig.*, 42 F.3d 1541, 1545 (9th Cir. 1994) (en banc)); *see also Brown v. Kellar*, 636 P.2d 874 (Nev. 1981) ("The circumstances that must be detailed include averments to the time, the place, the identity of the parties involved, and the nature of the fraud or mistake. 5 Wright and Miller, *Federal Practice and Procedure* § 1297 at p. 403 (1969)"). The elements of fraudulent misrepresentation are: (1) that defendant made a false representation; which (2) he either knew to be false or which he had an insufficient basis to conclude was true; (3) that defendant made the representation in order to induce reliance; (4) that plaintiffs justifiably relied on this statement; and (5) damages ensued. *Nevada Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1413 (D. Nev. 1995) (citations omitted).

North American has utterly failed to allege the specifics of each Individual Defendant's fraud, including the time, place, and specific content of each alleged misrepresentation, as well as which Individual Defendant made such alleged misrepresentations. Moreover, there is not a *single factual allegation* in the FAC or in Mr. Bailey's affidavit regarding the improper actions, if any, of Carol Ingalls, R. Scott Rottman and Bradley Pearce, three of the individually-named Defendants. With respect to Dick Rottman, Jeff Shaffer and Janice Bowman, the FAC and the Motion merely attach portions of testimony by these individuals provided in other proceedings, some of which are completely unrelated to this case. Neither the FAC nor Mr. Bailey's affidavit make any affirmative allegations regarding the details of any fraudulent misrepresentations made to North American by these individuals other than to mechanically list the elements of the claim.

With respect to the negligent misrepresentation claim, although not required to be plead with the same specificity as fraud, the FAC is nevertheless devoid of factual allegations to provide the Individual Defendants with notice of the purported misrepresentations made to North American. Again, North American is attempting to saddle the Individual Defendants with liability, when its claims for relief are clearly limited to the entity that it entered into a

1  contractual relationship with – Western. The Court should not permit North American to
2  summarily disregard corporate form when it has demonstrated absolutely no factual basis for
3  these allegations.

       *vi. The Civil Conspiracy Claim Lacks Any Supporting Factual Allegations.*

5   Under Nevada law, "an actionable civil conspiracy-to-defraud claim exists when there is
6 (1) a conspiracy agreement, i.e., 'a combination of two or more persons who, by some concerted
7 action, intend to accomplish an unlawful objective for the purpose of harming another;' (2) an
8 overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff."
9 Jordan v. State ex rel. Dep't of Motor Vehicles and Pub. Safety, 110 P.3d 30, 51 (Nev.2005)
10 (some internal quotation marks omitted), overruled on other grounds by Buzz Stew, LLC v. City
11 of North Las Vegas, 181 P.3d 670 (Nev.2008). "To allege a conspiracy to defraud, a complaint
12 must meet the particularity requirements of Federal Rule of Civil Procedure 9(b) and inform each
13 defendant of its actions that constituted joining the conspiracy." Anderson v. Deutsche Bank
14 Nat'l Trust Co., No. 2:10-CV-1443 JCM (PAL), 2010 WL 4386958, at *4 (D. Nev. Oct 29,
15 2010); Graziose v. Am. Home Prods. Corp., 202 F.R.D. 638, 642 (D.Nev.2001). Allegations of
16 conspiracy should be accompanied by the who, what, when, where, and how of the misconduct.
17 Ness v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.2003).

18   North American summarily claims that the Individual Defendants "by acting in concert,
19 intended to accomplish the unlawful objective of converting the funds which were to be held in
20 the collateral reserve account for the benefit of [North American]" and that the "Individual
21 Defendants intended to harm [North American] by converting the funds which were in the
22 collateral reserve account." *See* FAC, at ¶¶ 155-56. North American's civil conspiracy claim
23 does not contain the requisite specificity to allow it to go forward against any of the Defendants.
24 North American's claim consists of an allegation that a conspiracy existed and that North
25 American was damaged. *See* FAC ¶¶ 155-57. There are no allegations specific to any of the
26 Individual Defendants as to their alleged conduct in the purported conspiracy. The claim does
27 not assert even the most basic allegations such as what the conspiracy was, when it was entered
28 into, how it was entered into, and what acts made up the purported conspiracy.

1  Simply alleging that there was a civil conspiracy and that North American was damaged
2  does not come close to the specificity required under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
3  557 (2007) (holding naked allegations of conspiracy without factual enhancements do not cross
4  the line between possibility and plausibility to entitlement of relief). *See also Huggins v. Quality*
5  *Loan Servicing, LP,* 2011 WL 310490, 5 (D.Nev. 2011) (dismissing conspiracy claims that were
6  conclusory and did not state the "who, what, when, where, and how of the misconduct."). This
7  Court may therefore conclude that Defendants have a legitimate defense to North American's
8  conspiracy claim.

*vii. Constructive Trust Is Not An Available Remedy.*

10  To claim entitlement to a constructive trust, a plaintiff must allege that "(1) a confidential
11  relationship exists between the parties; (2) retention of legal title by the holder thereof against
12  another would be inequitable; and (3) the existence of such a trust is essential to the effectuation
13  of justice." *Waldman v. Maini,* 124 Nev. 1121, 1131, 195 P.3d 850, 857 (2008). "Where a
14  plaintiff can maintain an action at law and a legal remedy is adequate, resorting to equity is not
15  appropriate." *JPMorgan Chase Bank, N.A., v. KB Home*, 632 F. Supp. 2d 1013, 1028 (D. Nev.
16  2009). Thus, a claim for a constructive trust is not an available remedy where the "[p]laintiff
17  makes no factual allegations supporting the inadequacy of money damages." *Id.* at 1029; *see*
18  *also Stewart Title of Nev., Inc. v. Haenisch*, 2006 WL 3717419, *7 (D. Nev. 2006) (dismissing
19  constructive trust count of complaint where plaintiff alleged that it had an inadequate legal
20  remedy but provided no factual allegations to support this conclusion).

21  North American is not entitled to a constructive trust for two reasons. First, North
22  American does not allege what gave rise to the alleged confidential relationship between itself
23  and each Defendant. North American cannot make the blanket assertion that it had a confidential
24  relationship with Defendants, without explaining how it came to have a confidential relationship
25  with *each* Defendant separately. Second, North American cannot allege that it has no adequate
26  remedy at law. Indeed, North American has alleged numerous claims at law, which allow it an
27  adequate remedy at law should it prove its case. Monetary damages are clearly an adequate
28  remedy, and North American has not even bothered to allege that they are not. Accordingly,

1 North American is not likely to prevail in its request for a constructive trust either.

    E. <u>North American's Lawsuit Constitutes Impermissible Claim Splitting.</u>

   In addition to the foregoing independent reasons for why North American is not likely to prevail on its claims for relief, North American's entire lawsuit may be prohibited by the doctrine of "claim splitting," which "prohibits a plaintiff from prosecuting its case piecemeal, and requires that all claims arising out of a single wrong be presented in one action." *Myers v. Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000). Thus, when a suit is pending in federal court, a plaintiff has no right to assert another action "on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.*, 226 F.3d 138-39 (2d Cir. 2000) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)) ("As between federal district courts, ... though no precise rule has evolved, the general principle is to avoid duplicative litigation"); *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574 (D. Md. 2004).

   Although North American will claim that the Defendants in this lawsuit are distinct from Western and/or Access, it is clear that North American is pursuing almost identical claims for relief against Access in its pending adversary proceeding before the Bankruptcy Court. Both lawsuits arise from the same set of operative facts and allege practically identical wrongdoing. Even though Defendants dispute the viability of North American's claims against the officers and directors of Western/Access, let alone any legitimate basis to pursue A&H and Western Thrift, the most logical and judicially efficient forum to litigate any such claims would be before the Bankruptcy Court.

    F. <u>North American Would Have to Post A Bond In the Amount of Any Writ of Attachment</u>

   Even if this Court were to consider granting North American's Motion, which it should not, North American entirely fails to address the requirement that the party seeking a prejudgment writ of attachment must provide a written undertaking by two or more sureties in a sum not less than the amount claimed by the plaintiff, costs that may be awarded to the defendant, and damages which the defendant may sustain, including attorney's fees, if the

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

defendant is successful.  *See* NRS 31.030(1).  Without assurances from North American that it is ready and willing to post a bond in the amount of several million dollars – equal to the value of property it seeks to prematurely attach – no prejudgment writ of attachment should issue in this case.

## IV.     CONCLUSION

North American has not presented a single, legitimate basis to this Court for the issuance of a prejudgment writ of attachment in this case.  Not only is this case not based on any contractual relationship between the parties, but no extraordinary circumstances are present to warrant such a harsh remedy.  Finally, Defendants have demonstrated that they have numerous, legitimate defenses to North American's conclusory and factually unsupported claims for relief.  Based on the foregoing, this Court should summarily reject North American's Motion for Prejudgment Writ of Attachment.

DATED this 12th day of December, 2011.

/s/ *Tamara Reid*
Richard L. Elmore, Esq.
J. Robert Smith, Esq.
Tamara Reid, Esq.
Holland & Hart, LLP
5441 Kietzke Lane, Second Floor
Reno, NV  89511
*Attorneys for Defendants*

# PROOF OF SERVICE

I, Gaylene Silva, declare:

I am employed in the City of Reno, County of Washoe, State of Nevada by the law offices of Holland & Hart, LLP. My business address is 5441 Kietzke Lane, Second Floor, Reno, Nevada 89511. I am over the age of 18 years and not a party to this action.

I am readily familiar with Holland & Hart, LLP's practice for collection and processing of its outgoing mail with the United States Postal Service. Such practice in the ordinary course of business provides for the deposit of all outgoing mail with the United States Postal Service on the same day it is collected and processed for mailing.

On December 12, 2011, I caused the foregoing **OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE WHY PREJUDGMENT WRIT OF ATTACHMENT SHOULD NOT ISSUE** to be served by the following method(s):

☐ U.S. Mail: a true copy was placed in Holland & Hart LLP's outgoing mail in a sealed envelope addressed as follows:

☑ Electronic: filed the document electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document to the following person(s) at the following e-mail addresses:

☐ Hand-Delivery: by providing a true and correct copy to Holland & Hart's runners with instructions to hand-deliver the same to the address shown below:

☐ Facsimile: by placing a true copy thereof in Holland & Hart's outgoing facsimiles with instructions to fax same to the numbers referenced below:

Brian R. Irvine, Esq.
Wayne Klomp, Esq.
Jones Vargas
300 East Second Street, Suite 1510
Reno, NV  89504
Fax No. 775-786-1177
Email birvine@jonesvargas.com
Email wklomp@jonesvargas.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on December 12, 2011.

    /s/ Gaylene Silva
Gaylene Silva

5327822_1.DOC