1  Richard L. Elmore, Esq. NSB #1405
   J. Robert Smith, Esq. NSB
2  Tamara Reid, Esq. NSB #9840
   HOLLAND & HART LLP
3  5441 Kietzke Lane, Second Floor
   Reno, NV 89511
4  775-327-3000; 775-786-6179 (fax)
   relmore@hollandhart.com
5  jrsmith@hollandhart.com
   treid@hollandhart.com
6  *Attorneys for Defendants*

7

8                    UNITED STATES DISTRICT COURT

9                         DISTRICT OF NEVADA

10

11  NORTH AMERICAN DEALER CO-OP.           Case No. 3:11-cv-00698-RCJ-VPC

12                    Plaintiff,

13       vs.

14  DICK L. ROTTMAN; JEFFREY P.
    SHAFFER; JANICE LYNN BOWMAN,
15  CAROL B. INGALLS; BRADLEY A.
    PEARCE, R. SCOTT ROTTMAN, Individuals;
16  A AND H INSURANCE , INC., a Nevada
    corporation; WESTERN THRIFT & LOAN, a
17  Nevada corporation, and John Does I through
    XX and Doe Organizations I through XX,
18
                      Defendants.
19  _____/

20

21      **MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DAMAGES**

22      Pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), Defendants DICK L.

23  ROTTMAN, JEFFREY P. SHAFFER, JANICE LYNN BOWMAN, CAROL B. INGALLS,

24  BRADLEY A. PEARCE, R. SCOTT ROTTMAN, A & H INSURANCE, INC., and WESTERN

25  THRIFT & LOAN (collectively referred to as "Defendants"), hereby move to dismiss the First

26  Amended Complaint for Damages filed by Plaintiff, North American Dealer Co-Op ("North

27  American") for failure to state a claim upon which relief may be granted.

28  ///

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

This Motion is based upon the following Memorandum of Points and Authorities, the papers and pleadings on file herein, and any oral argument the Court may allow.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This case arises out of a contract between Plaintiff North American and a non-party, Western Insurance Company ("Western").  North American asserts that its expectations pursuant to its contract with Western have not been satisfied due to the purportedly improper actions of Western, and a related entity, Access Insurance Services ("Access").  Despite pursuing Access for relief in an adversarial proceeding before the United States Bankruptcy Court for the District of Nevada, North American has now filed the present action seeking to saddle the individual directors and officers of Western and Access with personal liability based on an apparent piercing the corporate veil theory.  Specifically, North American's First Amended Complaint for Damages ("FAC"), filed on December 1, 2011, asserts eight claims for relief including (1) breach of fiduciary duty against the individual defendants; (2) conversion against the individual defendants; (3) embezzlement under NRS 683A.400 against Defendants Dick Rottman and Jeffrey Shaffer; (4) fraudulent transfers against all Defendants; (5) fraud against the individual defendants; (6) constructive trust against all Defendants; (7) negligent misrepresentation against the individual defendants; and (8) civil conspiracy against the individual defendants.

Although not set forth in North American's FAC, the foregoing claims are predicated upon a finding by this Court that it should pierce the corporate veil of both Western and Access, neither of whom are parties to this case, and hold the officers and directors of these two companies individually liable.  Not only does North American's FAC fail to identify any facts that could even warrant such piercing, it is devoid of any legal theories justifying such personal liability.  Because North American has pled nothing that would allow this Court to cast aside the corporate form to reach the individual corporate officers and directors, all of North American's claims against these officers and directors must be dismissed.

North American has also asserted claims against two corporations: A & H Insurance ("A&H") and Western Thrift & Loan ("Western Thrift").  Like its claims against the individual

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

officers and directors of Western and Access, North American had no contractual relationship with either A&H or Western Thrift. Instead, North American alleges that the corporate officers and directors of Western wrongfully transferred money held in a collateral reserve account to A&H and Western Thrift. Thus, the only claims asserted by North American against A&H and Western Thrift are for fraudulent transfer and constructive trust. But because North American cannot pierce the corporate veil to establish that the individual officers and directors of Western and Access did anything improper, North American's claims against the two corporate defendants, A&H and Western Thrift, must also be dismissed.

Even if piercing the corporate veil were justified, which it is not, North American's claims for relief should still be dismissed because they are pled in a wholly conclusory fashion. A review of the FAC shows that there is an absence of factual allegations regarding the specific actions of any of the Defendants, let alone sufficient allegations to support North American's numerous fraud-based claims for relief. North American's carpet bombing strategy against Defendants in an attempt to satisfy North American's purely contractual claims against Western (which it is free to pursue in a separate action) should not be permitted to stand. North American's anticipated inability to recover from Western does not justify claims for relief such as fraud, conversion and embezzlement against Defendants in this case, based on nothing other than speculation. This Court should not serve as a forum for North American to explore potential avenues of relief against Defendants without any justification to do so in the first place. The FAC should accordingly be dismissed in its entirety without leave to amend.

## II.   FACTUAL BACKGROUND

This case is about a contractual relationship between North American and a third-party not named in this case, Western. Specifically, North American's allegations center on its contractual relationship and business dealings with Western and Western's managing general agent, Access, over a period of years. Neither Western nor Access is named as a defendant in this lawsuit.

The factual allegations that describe North American's relationship with Western as set forth in the FAC are relatively straightforward. [Doc. 22]. North American is a cooperative

association of automobile dealers in the United States. FAC at ¶14. North American offers its members an extended service contract reimbursement program, which in turn facilitates the sale of extended service contracts by members to their customers who purchase new or used automobiles. FAC at ¶15. North American entered into a contract with Western, whereby Western was to provide a surety bond to North American with respect to the program. FAC at ¶¶17, 24. Notably, the contract was solely between North American and Western. North American had no contractual relationship with any of the named individual defendants in this case (collectively referred to herein as the "Individual Defendants"), nor with the corporate defendants, A & H or Western Thrift.

North American makes a number of factual allegations regarding the scope of its contractual relationship with Western and Western's purported obligations pursuant to the surety bond issued to North American. North American also makes a number of factual allegations about Access, and its role in managing a "collateral reserve account." FAC at ¶28, 34. The crux of North American's allegations center around Western's and Access' control of the collateral reserve account, the monies paid into the account and monies disbursed from the account over a period of several years. FAC at ¶¶37-41. Such factual allegations do <u>not</u> involve the Defendants in the present action.

It is undisputed that in late 2010, Western dissolved its corporate existence in Nevada and reincorporated in the State of Utah. FAC at ¶46. In 2011, Western had financial difficulties, which ultimately lead to insolvency proceedings with the Utah Department of Insurance. FAC at ¶¶68-69. It is also undisputed that Access filed bankruptcy in the United States Bankruptcy Court for the District of Nevada on or about September 1, 2011. FAC at ¶70. Importantly, this Court should note that North American is pursuing separate and concurrent proceedings against Access in Bankruptcy Court. *See* Complaint in BK-N-11-52830-BTB (without exhibits), attached hereto as **Exhibit 1**, of which this Court may take judicial notice.[1] Upon information

---

[1]Although a review on a motion pursuant to Fed.R.Civ.P. 12(b)(6) is normally limited to the complaint itself, "[a] court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." Fed.R.Civ.P. 12(d); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003); *see* Fed.R.Evid. 201(b) ("A

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1   and belief, North American further has the ability to file a claim with the Utah Department of

2   Insurance until March 2012 if it seeks to claim a recovery from Western.

3       The Individual Defendants in this lawsuit are current and former officers and directors of

4   Western and Access, some of whom are also the directors and officers of the two corporate

5   defendants, A and H and Western Thrift.   The sole factual allegations against the Defendants in

6   the FAC are the following three conclusory, and redundant, allegations:

7           On information and belief, Western and Access, together with their officers,
    directors and owners, have misappropriated, or allowed the misappropriation of,
8           funds from the collateral reserve account, which were held by Western and/or
    Access in a fiduciary capacity for [North American], and have wrongfully
9           commingled the collateral reserve funds with other funds.

10          [North American] is informed and believes that the Individual Defendants have
    improperly and illegally, without the knowledge or consent of [North American],
11          taken the funds that were held in a fiduciary capacity in the collateral reserve
    account, and misappropriated said funds for the benefit of Defendants and/or
12          entities or organizations owned and controlled by Defendants.

13          [North American] is informed and believes that some of the funds that were held
    in a fiduciary capacity in the collateral reserve account, which the Individual
14          Defendants improperly and illegally misappropriated, without the knowledge or
    consent of [North American] were transferred to Defendant A AND H
15          INSURANCE, INC. ("A & H") and to Defendants WESTERN THRIFT &
    LOAN ("Western Thrift").
16

17  *See* FAC at ¶¶71, 73-74.

18      The foregoing allegations make clear that North American has no facts to link the

19  Individual Defendants, A&H or Western Thrift to any of the alleged actions of Western and

20  Access with respect to the collateral reserve account that is at the crux of North American's

21  FAC.  Nevertheless, North American is forging ahead with what is clearly a fishing expedition

22  against these Defendants, based merely on its own unfounded suspicions.

23  ///

24  ///

25  ///

26  ———————————————————— (continued)
    judicially noticed fact must be one not subject to reasonable dispute in that it is either (1)
27  generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and
    ready determination by resort to sources whose accuracy cannot reasonably be questioned.").
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

## III.   LEGAL ARGUMENT

### A.  Standard for Motion to Dismiss

Prior to 2007, the standard applied to Motions to Dismiss pursuant to FRCP 12(b)(6) was that dismissal was only appropriate where "'it appear[ed] beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *William O. Gilley Enter., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 668 n.6 (9th Cir. 2009) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).  However, in 2007, the Supreme Court decided that "this famous observation has earned its retirement," and it developed a new standard for reviewing a dismissal: whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 570 (2007).  In other words, plaintiffs must "nudge[] their claims across the line from conceivable to plausible" in order to survive a motion to dismiss.  *Id.* at 570.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Courts are not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Ashcroft*, 129 S. Ct. at 1950.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S. at 556.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557.

North American's FAC, filed on December 1, 2011, asserts eight claims for relief including (1) breach of fiduciary duty against the Individual Defendants; (2) conversion against the Individual Defendants; (3) embezzlement under NRS 683A.400 against Defendants Rottman and Shaffer; (4) fraudulent transfers against all Defendants; (5) fraud against the Individual Defendants; (6) constructive trust against all Defendants; (7) negligent misrepresentation against

1    the Individual Defendants; and (8) civil conspiracy against the Individual Defendants.

2         Most of the foregoing claims are premised upon North American's ability to pierce the

3    corporate veil of both Western and Access, so that the Individual Defendants may be held

4    personally liable.  As is set forth fully below, North American has insufficiently stated a basis for

5    this Court to disregard the corporate entities of both Western and Access.  In addition, and even

6    if North American could plead sufficient facts to justify piercing the corporate veil, its FAC is

7    devoid of specific factual allegations against each of the Defendants to support any of the

8    foregoing claims for relief.

9         B.  There Are No Factual Allegations to Support Piercing the Corporate Veil of
         Either Western or Access.

10

11        Veil piercing is a narrow exception to the doctrine of limited liability for corporate

12   entities; thus, veil piercing should be permitted only under extraordinary circumstances.  *Murray*

13   *v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996).  Where a claim to pierce the corporate veil is based on

14   allegations of fraud, FRCP 9(b)'s heightened pleading standard applies.  *Se. Texas Inns, Inc. v.*

15   *Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006).  However, even where veil piercing

16   is not based upon allegations of fraud, "purely conclusory allegations cannot suffice to state a

17   claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard

18   [under FRCP 8]."  *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512

19   (S.D.N.Y. 2005).  Rather, "[the plaintiff must] allege sufficient *facts* to support an inference that

20   [a party] has so dominated and disregarded [the corporate] form that [it] is in fact an alter ego."

21   *Arctic Ocean Int'l, Ltd. v. High Seas Shipping Ltd.*, 622 F. Supp. 2d 46, 54 (S.D.N.Y. 2009); *see*

22   *also De Jesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996) (conclusory

23   allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a

24   motion to dismiss).

25        The elements for piercing the corporate veil are as follows:

26        (1) the corporation must be influenced and governed by the person asserted to be
          the alter ego; (2) there must be such unity of interest and ownership that one is
27        inseparable from the other; and (3) the facts must be such that adherence to the
          corporate fiction of a separate entity would, under the circumstances, sanction [a]
28        fraud or promote injustice.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

*LFC Mkg. Group, Inc. v. Loomis,* 116 Nev. 896, 904, 8 P.3d 841, 846-47 (2000).  In addition to the requirement that the financial structure of the corporation is a sham, the following factors may indicate the existence of an alter ego relationship: (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities. *Id.* at 904, 847.

Here, North American has not specifically plead an alter ego claim against the Individual Defendants, but has nevertheless included factual allegations that mirror the elements of such a claim in an effort to impose individual liability on the officers and directors of Western and Access.  But North American's factual allegations, are at best, a mechanical recitations of the elements required to pierce the corporate veil.  They read as follows:

> NADC is informed and believes that the Individual Defendants are and were at all times pertinent hereto, the officers, directors, shareholders and/or owners of both A & H and Western Thrift.

> NADC is informed and believes that Western and/or Access were used by the Defendants as a pass-through shell for each Defendant's individual benefit.

> NADC is informed and believes that Western and/or Access was deliberately undercapitalized and has been since its formation.

> NADC is informed and believes that Western and/or Access is influenced and governed by the Defendants such that there is a unity of interest and ownership as to Western and/or Access such that each such entity is inseparable from the Defendants.

> Adherence to the fiction of Western and/or Access as a separate legal entity from the Defendants would, under the circumstances, sanction a fraud or promote injustice.  The Defendants have total control over Western and/or Access.

*See* Complaint at ¶75, 76, 77, 78 and 80.  These conclusory and unsupported statements constitute only a recitation of the bare bones elements and legal conclusions of alter ego liability.  Further, these statements are made only upon information and belief, and thus cannot support North American's alter ego theory. *See N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.,* 2009 WL 1513389, *9 (M.D. Fla. 2009) (dismissing alter ego claim where plaintiff alleged upon information and belief that there was commingling of funds and unity of ownership); *Taberna Capital Mgmt., LLC v. Dunmore,* 2009 WL 2850685 (S.D.N.Y. 2009) (formulaic recitations of alter ego elements upon information and belief could not survive motion to dismiss); *see also*

*Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (even if individual was entitled to all of company's profits and dominated or controlled those companies, such allegations were insufficient to hold individual personally liable for actions of company). These conclusory statements cannot satisfy the heightened requirements of Rule 9(b), which apply as North American has alleged fraud against the individual Defendants.

It is apparent that North American brought this lawsuit because it is uncertain that it can recover from Western and Access directly. However, this apprehension alone does not justify the instant lawsuit. The Nevada Supreme Court addressed a similar situation in *Paul Steelman, Ltd. v. Omni Realty Partners*, 110 Nev. 1223, 885 P.2d 549 (1994). In that case, the plaintiff – Paul Steelman, Ltd. – also attempted to pierce the corporate veil and impose liability on the officers and directors of a corporation. 110 Nev. at 1125, 885 P.2d at 550. The Supreme Court affirmed the lower court's finding that the attempt was unjustified, reasoning that "[t]he fact that Steelman will not be fully paid does not automatically create an 'injustice.'" 110 Nev. at 1126, 885 P.2d at 551. Moreover, the Court noted that "[i]t is unfortunate that Steelman's recovery is limited to the assets of two insolvent entities; but Steelman alone is responsible for not protecting against the eventuality that occurred by insisting on individual guarantees from shareholders who were financially capable of satisfying its claims [against the insolvent company]." *Id.* As in the foregoing case, North American should be limited to seeking recovery against Western and Access alone.

In light of the foregoing, North American's claims against the Individual Defendants fail as a matter of law because North American is unable to plead a sufficient basis for piercing the corporate veil.

### C. North American's Claims Also Fail Because They Are Devoid of any Supporting Factual Allegations.

#### i. *The Fiduciary Duty Claim Fails As a Matter of Law and Should Be Dismissed.*

The Nevada Supreme Court has held that fiduciary duties arise as a matter of law in certain categories of relationships. *See, e.g., Powers v. United Servs. Auto. Ass'n*, 115 Nev. 38, 979 P.2d 1286, 1288 (1999) (insurers and insured); *Cook v. Cook*, 112 Nev. 179, 912 P.2d 264,

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

266 (1996) (attorney and client); *id.* (spouses); *Fick v. Fick*, 109 Nev. 458, 851 P.2d 445, 449-50 (1993) (fiancés); *Leavitt v. Leisure Sports Inc.*, 103 Nev. 81, 734 P.2d 1221, 1224 (1987) (corporate officers or directors and corporation). In relationships falling outside these categories, Nevada law recognizes a duty owed in "confidential relationships," where "one party gains the confidence of the other and purports to act or advise with the other's interests in mind." *Perry v. Jordan*, 111 Nev. 943, 900 P.2d 335, 338 (1995) (per curiam) (internal quotation marks and citation omitted). The duty owed is comparable to a fiduciary duty: "When a confidential relationship exists, the person in whom the special trust is placed owes a duty to the other party similar to the duty of a fiduciary, requiring the person to act in good faith and with due regard to the interests of the other party." *Id.*

A confidential relationship "may exist although there is no fiduciary relationship; it is particularly likely to exist when there is a family relationship or one of friendship." *Id.* (internal quotation marks and citation omitted). Demonstrating a confidential relationship fulfills the fiduciary duty element of actions for constructive fraud and undue influence. *See id.* at 337; *Peardon v. Peardon*, 65 Nev. 717, 201 P.2d 309, 333 (1948). In *Perry*, the Nevada Supreme Court found a confidential relationship between two "close friends and neighbors," where an experienced and well-educated businesswoman sold a business to her friend, who had only an eighth-grade education and who entrusted her friend, the experienced businesswoman, with managing the business. 900 P.2d at 336-38. Taking the foregoing into consideration, the Ninth Circuit Court of Appeals held that under Nevada law, no confidential or special relationship existed between an automobile dealership and a finance company that provided the dealership's floorplan financing, and that no such duty existed between the finance company and the dealership's owner-operators. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865 (9th Cir. 2007).

Without any factual allegations to describe the relationship between the Individual Defendants and North American, North American alleges in its FAC that the "Individual Defendants owed a fiduciary obligation to [North American] as officers and directors of Western Insurance Company and its managing general agent, Access. [North American] had the right to

Page 10 of 19

1   expect trust and confidence in the officers and directors of the entities holding the collateral

2   reserve account which, by their own admission, was a fiduciary account." *See* Motion, at p. 12:

3   10-13.  However, as the factual allegations of the FAC make clear, the only relationship that

4   existed was a contractual relationship between North American and Western.  As such, any claim

5   of a fiduciary duty – if one were to exist – would be solely between North American and

6   Western.[2]  To claim that Western's current and former officers and directors owed some type of

7   separate, actionable fiduciary duty to North American is unsupportable under the law.

8   Accordingly, this Court should conclude that as a matter of law, no fiduciary or confidential

9   relationship existed between North American and the Individual Defendants.  North American's

10  claim for breach of fiduciary duty should therefore be dismissed for failure to state a claim upon

11  which relief may be granted.

> ii.  *North American's Conversion and Embezzlement Claims Are Completely*
> *Conclusory.*

14      For its conversion claim for relief, North American claims that "the Individual

15  Defendants converted and misappropriated funds in the collateral reserve account, taking such

16  funds for the Individual Defendants' personal benefit without the knowledge or consent of

17  [North American]."  FAC at ¶96.  Similarly, North American's third claim for relief

18  (embezzlement) is brought under NRS 683A.400, and claims that "Western and Access, at the

19  direction of [Rottman and Shaffer], diverted or misappropriated funds from the collateral reserve

20  account."  FAC at ¶111.  In relevant part, NRS 683A.400(1) provides that "[a]ll money of others

21  received by any person in any way licensed or acting as a producer of insurance, . . . under any

22  insurance policy or undertaking of bail is received and held by the person in a fiduciary capacity.

23  Any such person who diverts or appropriates such fiduciary money to his or her own use is guilty

24  of embezzlement."  North American is unlikely to prevail on either of these claims for relief

25  because both claims are plead in a conclusory fashion, without any supporting factual allegations

26  of specific wrongful conduct by any of the Individual Defendants.

27

28  ───────────────
[2]Even a claim of a fiduciary relationship between North American and Western is tenuous, at
best, in light of the fact that the relationship was solely a contractual one and involved arms'
length negotiations between two sophisticated entities.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Both the conversion and embezzlement claim require that the specific monies are delivered to the charged party for safekeeping and that the charged party has an obligation to treat such monies in a particular manner. *Brown ex rel. Richards v. Brown*, 239 P.3d 602 (Wash. Ct. App. Div. 1 2010) (money may become the subject of conversion, but only if the party charged with conversion wrongfully received the money, or if that party had an obligation to return the money to the party claiming it); *ADP Investor Communication Services, Inc. v. In House Attorney Services, Inc.*, 390 F. Supp. 2d 212 (E.D. N.Y. 2005) (An action will lie under New York law for conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question and that money is specifically identifiable); *Taylor Pipeline Const., Inc. v. Directional Road Boring, Inc.*, 438 F. Supp. 2d 696 (E.D. Tex. 2006) (Under Texas law, money can be the subject of conversion, but only when it is in the form of specific chattel, such as old coins, or when the money is delivered to another party for safekeeping, the keeper claims no title, and the money is required and intended to be segregated, either substantially in the form in which it was received or as an intact fund).

Here, North American has solely alleged that it delivered money to Western and/or Access, not to any of the Individual Defendants, and further claims that Western and/or Access – not any of the Individual Defendants – had a duty to maintain the collateral reserve funds in a particular manner. There is not a single factual allegation showing a separate agreement by any of the Individual Defendants to maintain these funds on behalf of North American. As already set forth above, North American should not be permitted to freely pursue the officers and directors of these corporations for such egregious claims such as conversion and embezzlement without even a single factual allegation to tie these individuals to any wrongdoing.

        *iii.   The Fraudulent Transfer Claim Should Be Dismissed as Inapplicable.*

North American's fraudulent transfer claim is governed by the Uniform Fraudulent Transfer Act, codified in NRS Chapter 112. "The UFTA is designed to prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." *Herup v. First Boston Financial, LLC*, 123 Nev. 228, 232, 162 P.3d 870, 872 (2007). Here, North American's claim fails as a matter of law because Defendants cannot be considered "debtors" liable on a

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1  "claim" to North American within the meaning of the UFTA. *See* NRS 112.150. This is because

2  while North American may attempt to argue that Western (and perhaps Access) were liable for

3  fulfilling obligations on the surety bond, the same cannot be said of the Individual Defendants,

4  none of whom personally guaranteed performance to North American.

5      Again, North American is improperly attempting to bypass the corporate form of both

6  Western and Access to expose the Individual Defendants to liability when it has no basis to do

7  so. Similarly, neither A&H nor Western Thrift can be liable for fraudulent transfer because these

8  are separate corporate entities from Western and Access, and were not involved in any way in

9  the contractual relationship between North American and Western. This Court should therefore

10  dismiss the fraudulent transfer claim for relief because it is inapplicable as a matter of law.

11          *iv.   North American's Fraud and Negligent Misrepresentation Claims Are Not
                Plead With Specificity and Should Be Dismissed.*

13      North American alleges fraud and negligent misrepresentation by the Individual

14  Defendants as its fifth and seventh claims for relief. As with many of its remaining claims for

15  relief, these claims have been stated in a completely conclusory fashion, let alone with the

16  required specificity for fraud allegations. Accordingly, this Court should not hesitate to dismiss

17  these two claims for relief.

18      The elements of fraudulent misrepresentation are: (1) that defendant made a false

19  representation; which (2) he either knew to be false or which he had an insufficient basis to

20  conclude was true; (3) that defendant made the representation in order to induce reliance; (4) that

21  plaintiffs justifiably relied on this statement; and (5) damages ensued. *Nevada Power Co. v.*

22  *Monsanto Co.*, 891 F. Supp. 1406, 1413 (D. Nev. 1995) (citations omitted). With respect to a

23  negligent misrepresentation claim, the Nevada Supreme Court has adopted the Restatement

24  (Second) of Torts § 552 definition, which states:

25          One who, in the course of his business, profession or employment, or in any other
            action in which he has a pecuniary interest, supplies false information for the

26          guidance of others in their business transactions, is subject to liability for
            pecuniary loss caused to them by their justifiable reliance upon the information, if

27          he fails to exercise reasonable care or competence in obtaining or communicating
            the information.

28

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1    *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 956 P.2d 1382, 1387 (1998).

2          Fed. R. Civ. P. 9(b) and NRCP 9(b) both provide that all averments of fraud must be

3    plead with particularity.   To allege an averment of fraud with the requisite particularity, a

4    complaint must include an account of the "time, place, and specific content of the false

5    representations as well as the identities of the parties to the misrepresentations." *Swartz v.*

6    *KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("To comply with Rule 9(b), allegations of fraud

7    must be specific enough to give defendants notice of the particular misconduct which is alleged

8    to constitute the fraud charged so that they can defend against the charge and not just deny that

9    they have done anything wrong"); *see also Yourish v. California Amplifier*, 191 F.3d 983, 993

10   (9th Cir. 1999) (citing *In re Glenfed Sec. Litig.*, 42 F.3d 1541, 1545 (9th Cir. 1994) (en banc));

11   *see also Brown v. Kellar*, 636 P.2d 874 (Nev. 1981) ("The circumstances that must be detailed

12   include averments to the time, the place, the identity of the parties involved, and the nature of the

13   fraud or mistake.   5 Wright and Miller, *Federal Practice and Procedure* § 1297 at p. 403

14   (1969)").   The United States District Court for the District of Nevada has held that negligent

15   misrepresentation must also be stated with specificity to survive a motion to dismiss. *See Larson*

16   *v. Homecomings Financial, LLC*, 680 F. Supp. 2d 1230, 1234 -1235 (D. Nev. 2009) (concluding

17   that plaintiffs' claim for negligent misrepresentation failed because it was not pled with

18   specificity under Rule 9(b)).

19          North American has utterly failed to allege the specifics of each Individual Defendant's

20   purported fraud or misrepresentation, including a failure to state the time, place, and specific

21   content of each alleged misrepresentation, as well as which Individual Defendant made such

22   alleged misrepresentations.   North American fails to allege the specific content of the fraudulent

23   statements-their allegations only include broad generalizations. Thus, this Court should dismiss

24   North American's fraud and negligent misrepresentation claim.

25          Moreover, there is not a *single factual allegation* in the FAC regarding the improper

26   actions, if any, of Carol Ingalls, R. Scott Rottman and Bradley Pearce, three of the individually-

27   named Defendants.   Undifferentiated pleading against multiple defendants is improper. *See, e.g.,*

28   *In re Sagent Tech., Inc.*, 278 F.Supp.2d 1079, 1094 (N.D.Cal.2003) ("[T]he complaint fails to

state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act."); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D.Cal.1988) (lumping together multiple defendants in one broad allegation fails to satisfy notice requirement of FRCP 8(a)(2)).With respect to Dick Rottman, Jeff Shaffer and Janice Bowman, the FAC and the Motion merely attach portions of testimony by these individuals provided in other proceedings, some of which are completely unrelated to this case.  The FAC simply fails to make any affirmative allegations regarding the details of any fraudulent or negligent misrepresentations made to North American by these individuals other than to mechanically list the elements of these claims.   In light of the foregoing, this Court should not hesitate to dismiss these claims for failure to plead with specificity.

*v.   North American's Civil Conspiracy Claim Is Conclusory.*

Under Nevada law, "an actionable civil conspiracy-to-defraud claim exists when there is (1) a conspiracy agreement, i.e., 'a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another;' (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff." *Jordan v. State ex rel. Dep't of Motor Vehicles and Pub. Safety*, 110 P.3d 30, 51 (Nev.2005) (some internal quotation marks omitted), overruled on other grounds by *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 181 P.3d 670 (2008). "To allege a conspiracy to defraud, a complaint must meet the particularity requirements of Federal Rule of Civil Procedure 9(b) and inform each defendant of its actions that constituted joining the conspiracy." *Anderson v. Deutsche Bank Nat'l Trust Co.*, No. 2:10-CV-1443 JCM (PAL), 2010 WL 4386958, at *4 (D. Nev. Oct 29, 2010); *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 642 (D. Nev.2001). Allegations of conspiracy should be accompanied by the who, what, when, where, and how of the misconduct. *Ness v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

North American summarily claims that the Individual Defendants "by acting in concert, intended to accomplish the unlawful objective of converting the funds which were to be held in the collateral reserve account for the benefit of [North American]" and that the "Individual Defendants intended to harm [North American] by converting the funds which were in the

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1   collateral reserve account." *See* FAC, at ¶¶ 155-56.  North American's civil conspiracy claim

2   does not contain the requisite specificity to allow it to go forward against any of the Defendants.

3   North American's claim consists of an allegation that a conspiracy existed and that North

4   American was damaged.  *See* FAC ¶¶ 155-57.  There are no allegations specific to any of the

5   Individual Defendants as to their alleged conduct in the purported conspiracy.  The claim does

6   not assert even the most basic allegations such as what the conspiracy was, when it was entered

7   into, how it was entered into, and what acts made up the purported conspiracy.

8        Simply alleging that there was a civil conspiracy and that North American was damaged

9   does not come close to the specificity required under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

10  557 (2007) (holding naked allegations of conspiracy without factual enhancements do not cross

11  the line between possibility and plausibility to entitlement of relief).  *See also Huggins v. Quality*

12  *Loan Servicing, LP,* 2011 WL 310490, 5 (D.Nev. 2011) (dismissing conspiracy claims that were

13  conclusory and did not state the "who, what, when, where, and how of the misconduct.").  This

14  Court should therefore dismiss North American's conspiracy claim.

15           *vi.   The Remedy of Constructive Trust Is Not Available.*

16       To claim entitlement to a constructive trust, a plaintiff must allege that "(1) a confidential

17  relationship exists between the parties; (2) retention of legal title by the holder thereof against

18  another would be inequitable; and (3) the existence of such a trust is essential to the effectuation

19  of justice."  *Waldman v. Maini,* 124 Nev. 1121, 1131, 195 P.3d 850, 857 (2008).  "Where a

20  plaintiff can maintain an action at law and a legal remedy is adequate, resorting to equity is not

21  appropriate."  *JPMorgan Chase Bank, N.A., v. KB Home*, 632 F. Supp. 2d 1013, 1028 (D. Nev.

22  2009).  Thus, a claim for a constructive trust is not an available remedy where the "[p]laintiff

23  makes no factual allegations supporting the inadequacy of money damages."  *Id.* at 1029; *see*

24  *also Stewart Title of Nev., Inc. v. Haenisch*, 2006 WL 3717419, *7 (D. Nev. 2006) (dismissing

25  constructive trust count of complaint where plaintiff alleged that it had an inadequate legal

26  remedy but provided no factual allegations to support this conclusion).

27       North American is not entitled to a constructive trust for two reasons.  First, North

28  American does not allege what gave rise to the alleged confidential relationship between itself

1   and each Defendant.  North American cannot make the blanket assertion that it had a confidential

2   relationship with Defendants, without explaining how it came to have a confidential relationship

3   with *each* Defendant separately.  Second, North American cannot allege that it has no adequate

4   remedy at law.  Indeed, North American has alleged numerous claims at law, which allow it an

5   adequate remedy at law should it prove its case.  Monetary damages are clearly an adequate

6   remedy, and North American has not even bothered to allege that they are not.  Accordingly, this

7   Court may further dismiss North American's request for the imposition of a constructive trust.

8           D.  North American's FAC Should Also Be Dismissed Under the Claim Splitting
              Doctrine.

9

10          In addition to the foregoing independent reasons for why North American is not likely to

11  prevail on its claims for relief, North American's entire lawsuit may be prohibited by the

12  doctrine of "claim splitting," which "prohibits a plaintiff from prosecuting its case piecemeal,

13  and requires that all claims arising out of a single wrong be presented in one action."  *Myers v.

14  Colgate-Palmolive Co.*, 102 F. Supp. 2d 1208, 1224 (D. Kan. 2000).  Thus, when a suit is

15  pending in federal court, a plaintiff has no right to assert another action "on the same subject in

16  the same court, against the same defendant at the same time."  *Curtis v. Citibank, N.A.*, 226 F.3d

17  138-39 (2d Cir. 2000) (citing *Colorado River Water Conservation Dist. v. United States*, 424

18  U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)) ("As between federal district courts, ...

19  though no precise rule has evolved, the general principle is to avoid duplicative litigation"); *see

20  also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574 (D. Md. 2004).

21          Although North American will claim that the Defendants in this lawsuit are distinct from

22  Western and/or Access, it is clear that North American is pursuing almost identical claims for

23  relief against Access in its pending adversary proceeding before the Bankruptcy Court.  Both

24  lawsuits arise from the same set of operative facts and allege practically identical wrongdoing.

25  Even though Defendants dispute the viability of North American's claims against the officers

26  and directors of Western/Access, let alone any legitimate basis to pursue A&H and Western

27  Thrift, the most logical and judicially efficient forum to litigate any such claims would be before

28  the Bankruptcy Court.

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1

## IV.   CONCLUSION

2      Based on the foregoing, this Court should dismiss, in its entirety, North American's First

3 Amended Complaint for Damages because North American has failed to allege any claims upon

4 which relief may be granted.

5      DATED this 19th day of December, 2011.

6

7                                         /s/ Tamara Reid
                                        Richard L. Elmore, Esq.
8                                       J. Robert Smith, Esq.
                                        Tamara Reid, Esq.
9                                       Holland & Hart, LLP
                                        5441 Kietzke Lane, Second Floor
10                                      Reno, NV  89511
                                        *Attorneys for Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**PROOF OF SERVICE**

I, Liz Ford, declare:

I am employed in the City of Reno, County of Washoe, State of Nevada by the law offices of Holland & Hart, LLP. My business address is 5441 Kietzke Lane, Second Floor, Reno, Nevada 89511. I am over the age of 18 years and not a party to this action.

I am readily familiar with Holland & Hart, LLP's practice for collection and processing of its outgoing mail with the United States Postal Service. Such practice in the ordinary course of business provides for the deposit of all outgoing mail with the United States Postal Service on the same day it is collected and processed for mailing.

On December 19, 2011, I caused the foregoing **MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DAMAGES** to be served by the following method(s):

☐   U.S. Mail:  a true copy was placed in Holland & Hart LLP's outgoing mail in a sealed envelope addressed as follows:

☑   Electronic:   filed the document electronically with the U.S. District Court and therefore the court's computer system has electronically delivered a copy of the foregoing document to the following person(s) at the following e-mail addresses:

☐   Hand-Delivery: by providing a true and correct copy to Holland & Hart's runners with instructions to hand-deliver the same to the address shown below:

☐   Facsimile:  by placing a true copy thereof in Holland & Hart's outgoing facsimiles with instructions to fax same to the numbers referenced below:

Brian R. Irvine, Esq.
Wayne Klomp, Esq.
Jones Vargas
300 East Second Street, Suite 1510
Reno, NV 89504
Fax No. 775-786-1177
Email birvine@jonesvargas.com
Email wklomp@jonesvargas.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on December 19, 2011.

_ /s/ Liz Ford_____
Liz Ford

Holland & Hart LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

5336057_1.DOC

## INDEX OF EXHIBITS

| Exhibit 1 | Complaint (without referenced exhibits) | 21 Pages |
|-----------|------------------------------------------|----------|

**EXHIBIT "1"**

**EXHIBIT "1"**

1  BRIAN R. IRVINE, ESQ.
   Nevada Bar #7758
2  JUSTIN BUSTOS, ESQ.
   Nevada Bar No. 10320
3  JONES VARGAS
   300 East Second Street, Suite 1510
4  P.O. Box 281
   Reno, NV 89504
5  Telephone: 775-786-5000
   Facsimile: 775-786-1177
6  Email: birvine@JonesVargas.com
   Email: jbustos@JonesVargas.com
7
   Attorneys for Plaintiff/Creditor
8  North American Dealer Co-Op.

9              UNITED STATES BANKRUPTCY COURT

10                  DISTRICT OF NEVADA

11  In re                              **CASE NO.: BK-N-11-52830-BTB**
                                       **Chapter 11**
12  ACCESS INSURANCE SERVICES, INC.

13          Debtor.                    **COMPLAINT**

14  NORTH AMERICAN DEALER CO-OP,       Adv. No._____
            Plaintiff,
15  vs.
    ACCESS INSURANCE SERVICES, INC.,
16  a Nevada Corporation,
            Defendant.
17

18                     **THE PARTIES**

19     1.     The above-captioned debtor filed its petition commencing a case under chapter 11

20  of the Bankruptcy Code on September 1, 2011 (the "Petition Date").

21     2.     Plaintiff North American Dealer Co-op ("NADC") is a Colorado cooperative

22  association with its principal place of business located at 1661 Wadsworth Boulevard,

23  Lakewood, CO 80214.

24     3.     Plaintiff is informed and believes and thereon alleges that Defendant Access

25  Insurance Services, Inc. ("Access") is a corporation organized and existing under the laws of

26  Nevada with its principal place of business located at 675 West Moana Lane, Reno, NV 89509.

27  ///

28  ///

1676349.doc                    Page 1 of 21

**JURISDICTION AND VENUE**

4.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U. S. C. § 157 and §1334, and pursuant to 11 U.S.C. § 547, 548 and 550. Plaintiff believes and avers that the claims for relief are "core" proceedings subject to determination by this Court pursuant to 28 U.S.C. §157(b)(2)(B), (C), (E), and (F) or otherwise related matters pursuant to 28 U.S.C. §1334. In the event any claim for relief is determined not to be a "core" proceeding, Plaintiff hereby consents to its determination of such claim by this Court.

5.     Venue is proper pursuant to 28 U.S.C. §1449.  Venue is appropriate because a substantial part of the events or omissions giving rise to the claims made in this action occurred within this judicial district, the collateral reserve account which is a subject of the claims set forth in this litigation is, on information and belief, either located within this judicial district or controlled from this judicial district and the defendants are subject to personal jurisdiction in this judicial district.

**GENERAL ALLEGATIONS**

6.     This action arises from the failure of Defendant Access, acting with and through Western Insurance Company ("Western"), for which Access serves as managing general agent, to properly segregate, maintain, administer and protect a collateral reserve account, held in a fiduciary capacity, consisting of funds belonging to NADC and its member dealers.

7.     Western, Access, and their officers, directors and owners breached their contractual and fiduciary duties to NADC by failing to segregate, maintain and administer the collateral reserve account and by failing to pay approved reimbursement claims submitted to them by NADC from the collateral reserve account.

8.     Additionally, on information and belief, Western, Access, and their officers, directors and owners have wrongfully commingled and misappropriated funds from the collateral reserve account.

9.     NADC offers its members, who are principally automobile dealers located in the United States, an extended service contract reimbursement program, which program helps

Jones Vargas
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

1    facilitate sales of extended service contracts by the member dealers to their customers who

2    purchase new or used automobiles.

3        10.        Western was, from April 1, 1994 through and including December 31, 2010, an

4    insurance company organized and existing under the laws of the State of Nevada, with its

5    principal place of business located at 675 W. Moana Lane, Reno, Nevada 89509. On information

6    and belief, on or about December 23, 2010, Western dissolved its corporate existence in Nevada

7    effective December 31, 2010. On information and belief, Western is currently organized and

8    existing under the laws of Utah, with its principal place of business remaining at 675 W. Moana

9    Lane, Reno, NV 89509. An order of rehabilitation was entered against Western in the Third

10   Judicial District Court In and For Salt Lake County, Utah on August 25, 2011.

11       11.        Western provides a surety bond to NADC and its member dealers guaranteeing

12   the payment of any money back reimbursements due under the extended service contract

13   reimbursement program and also administers and controls a member dealer collateral reserve

14   account into which member dealers pay "reserves" to cover anticipated reimbursement claims

15   arising under the extended service contract reimbursement program.

16       12.        At all times material hereto Defendant Access served as the managing general

17   agent for Western.  Under its authority as managing general agent, Access was responsible for

18   Western's performance under the surety bond and was required, inter alia, to manage, administer

19   and protect the collateral reserve account created pursuant to the surety bond.  In its capacity as

20   managing general agent, Access is either a party to the agreement between NADC and Western

21   or NADC is an intended third party beneficiary of the managing general agent agreement

22   between Western and Access.

23                          **FACTUAL BACKGROUND**

24   A.    **The NADC Extended Service Contract Reimbursement Program – A**
           **General Description**

25

26       13.        NADC is a cooperative association consisting primarily of automobile dealers in

     the United States.

27

28

JONES VARGAS
300 East Second Street, Suite 1510 · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

14.     NADC offers its member dealers an extended service contract reimbursement program (the "Program").

15.     The Program provides member dealers with a competitive advantage in selling extended vehicle service contracts to their customers, which advantage they likely could not obtain absent membership in the cooperative.

16.     Under the Program, member dealers are able to offer customers interested in buying an extended vehicle service contract a "money back guarantee" which provides that if the customer does not use the extended service contract prior to the date of its expiration, the customer will, assuming they comply with other terms and conditions, receive a refund of the purchase price for their extended service contract up to a certain limit.

17.     NADC, through its administrator, National Administrator Dealer Services, Inc. ("NADS"), provides administrative services to the dealer members in connection with operation of the Program, including, inter alia, maintaining all necessary records, verifying valid claims and submitting approved claims to Western for payment.

18.     In connection with the Program, the member dealers set aside a "reserve" for each extended service contract which is provided with a money back guarantee. The reserve is intended to pay all future reimbursement claims that may be made against the member dealer.

19.     Access, in its capacity as managing general agent for Western, and, on information and belief, pursuant to a contract with Western, administers and controls the reserves on behalf of NADC and its member dealers.

20.     Access and Western, based on actuarial considerations, set the reserve amount payable for each money back guarantee issued and hold the reserves in a "collateral reserve account" which is a trust account that Access and Western hold in a fiduciary capacity for NADC and its member dealers.

21.     To protect against the possibility that the member dealers' own reserves held in the collateral reserve fund will be insufficient to pay all claims that may be made against outstanding money back guarantees, NADC dealer members are protected by a surety bond issued by Western.

22.   The surety bond issued by Western is intended to pay all valid outstanding reimbursement claims in the event that the collateral reserve account becomes depleted.

**B.    The Surety Bond**

23.   On or about April 1, 2004, Western issued to NADC a contract called the Vehicle Service Contract Reimbursement Guarantee Performance Contract number WCB211349 (the "Western Bond"), a true and correct copy which is attached hereto as Exhibit 1 and is incorporated herein by reference.

24.   The Western Bond is a surety bond issued to NADC and its member dealers. August 6, 2009 Declaration of Dick L. Rottman, the Chief Executive Officer and President of Western, at paragraph 6, which is attached hereto as Exhibit 2 and is incorporated herein by reference (the "Rottman Declaration").

25.   The Western Bond has been in place continuously since 2004. Rottman Declaration at paragraph 6.

26.   The Western Bond is intended to pay all valid and approved claims by customers who were issued a money back guarantee in the event that the member dealers' reserve account is depleted. Rottman Declaration at paragraph 8.

**C.    The Collateral Reserve Account**

27.   Pursuant to the terms of the Western Bond, NADC dealer members created a collateral reserve account which the member dealers use to pay all valid claims on money back reimbursement guarantees. Rottman Declaration at paragraph 7.

28.   The collateral reserve account is funded by the dealer each time the dealer sells an extended service contract with a money back guarantee.

29.   The amount of the reserve to be deposited into the collateral reserve account is set by Access and Western.  The original collateral reserve amount per contract sold with a money back guarantee was $60 in accordance with Endorsement A to the Western Bond.

30.   Thereafter, Access and Western would adjust the collateral reserve amount periodically by written notice to NADC. True and correct copies of notices from Western and/or Access to NADC setting the amount of the reserve to be paid by each member dealer for each

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1    money back guarantee provided to a customer are attached hereto collectively as Exhibit 3 and

2    made a part hereof.

3           31.    The collateral reserve account is closely monitored by Western and Access to

4    ensure that it is adequately funded. Rottman Declaration at paragraph 8.

5           32.    Reserve funds collected from member dealers by NADC are forwarded to

6    Western and/or Access pursuant to the Western Bond and the parties' agreement.

7           33.    The reserve funds are then retained by Western in the collateral reserve account.

8    December 12, 2007 Declaration of Janice Bowman, Chief Operating Officer and Senior Vice

9    President of Western at paragraph 4, a true and correct copy of which is attached hereto as

10   Exhibit 4 and incorporated herein by reference (the "Bowman Declaration").

11          34.    Western has its managing general agent, Access, hold the collateral reserve

12   account on its behalf. Rottman Declaration at paragraph 7; Dick Rottman Sworn Testimony

13   before the Washington State Office of the Insurance Commissioner, pages 79-80, lines 24-14, a

14   true and correct copy of which is attached hereto as Exhibit 5 and incorporated herein by

15   reference.

16          35.    The collateral reserve account is held by Western and Access in a fiduciary

17   capacity. Exhibit 5, Dick Rottman Sworn Testimony before the Washington State Office of the

18   Insurance Commissioner, page 82, lines 14-22.

19          36.    The collateral reserve account is segregated in investment and accounting records

20   by Access and the funds held in the collateral reserve account are not available to other creditors

21   even if Western were to file bankruptcy. A true and correct copy of the March 24, 2008 letter

22   statement of Access to NADC is attached hereto as Exhibit 6 and is incorporated herein by

23   reference.

24          37.    NADC and NADS do not have control over, or access to, the funds retained by

25   Western and Access in the collateral reserve account.   Bowman Declaration at paragraph 4;

26   Rottman Declaration at paragraph 7.

27          38.    Since April 1, 2004, approximately seventeen million dollars in member dealer

28   reserves have been paid to Western for deposit into the collateral reserve account.

1    39.    Reimbursement claims under the money back guarantee are submitted to NADS,

2    as the administrator for NADC and the member dealers.

3    40.    NADS investigates each claim for compliance with Program requirements and

4    forwards approved valid and complete claims to Western for payment out of the collateral

5    reserve account.

6    41.    Western and/or Access pay the approved claims out of the collateral reserve

7    account in accordance with the Western Bond and the parties' agreement. Rottman Declaration at

8    paragraph 7.

9    42.    Since April 1, 2004, nine million dollars has been paid out of the collateral

10   reserve account in payment of reimbursement claims approved by NADS and submitted to

11   Western for payment.

12   43.    As of the date of filing of this Complaint, the collateral reserve account should

13   have a balance of $8,250,000.00.

14   **D.    Recent Events Giving Rise To This Litigation**

15   44.    On information and belief, on or about December 23, 2010, Western dissolved its

16   corporate existence in Nevada effective December 31, 2010 without notice to or consultation

17   with NADC or its administrator, NADS. A true and correct copy of a print-out from the Nevada

18   Secretary of State showing the dissolution is attached hereto as Exhibit 7 and is incorporated

19   herein.

20   45.    While Western continues to do business from its same location, using the same

21   name, it has not provided any formal notice or confirmation to NADC or NADS that the Western

22   Bond has been assumed by its successor and will continue to be honored.

23   46.    Since the date of the dissolution, neither Western nor Access has provided any

24   formal notice or confirmation to NADC or NADS with respect to the current status of the

25   collateral reserve account.

26   47.    On or about July 1, 2011, the United States Treasury Department delisted Western

27   Insurance Company and a related entity, Western Bonding Company, which prevents them from

28   writing bonds for federal construction projects.

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

48.   On information and belief, the delisting was the result of an analysis of Western's weakened risk adjusted capitalization, continued exposure to troubled sections of the economy in Nevada and California, uncertainty over its loss reserve adequacy, and concentration of loans to contractors that are mostly collateralized by illiquid real estate.

49.   On information and belief, on or about July 13, 2011, A.M. Best, which rates the financial stability and integrity of insurance companies, downgraded the financial strength rating for Western Insurance Company to B (fair) from B++ (good). A.M. Best also stated that the outlook for ratings for Western Insurance Company is negative. A true and correct copy of the summary report on Western Insurance Company from A.M. Best is attached hereto as Exhibit 8 and is incorporated herein.

50.   Neither Western nor Access provided any notice to NADC or NADS concerning the Treasury Department delisting or the downgrade by A.M. Best.

51.   Commencing approximately August 18, 2011, NADC became aware that the Utah Department of Insurance, which is now the regulatory body which has authority over Western, commenced an investigation into the solvency of Western.  NADC is further informed and believe that, as a result of that investigation, the Utah Department of Insurance put Western into rehabilitation and has appointed a receiver or other administrator to operate Western.

52.   Commencing in approximately May 2011 Western started failing to pay out of the collateral reserve account approved reimbursement claims submitted to it by NADC and NADS for payment.

53.   Under the terms of Article IX, section A of the Western Bond and the parties' agreement, Western is required to make the reimbursement payments out of the collateral reserve account within thirty (30) day of receipt of approved claims with complete documentation.

54.   NADS and NADC have submitted more than 811 approved claims to Western and Access with complete documentation over the last four months, having a claim value of approximately one million two hundred and fifty thousand dollars.

55.   Of the approved and completed claims submitted to Western and Access, as of the date of this Complaint, approximately 481 were submitted to Western and Access more than

JONES VARGAS
300 East Second Street, Suite 1510 · P.O. Box 281
Reno, NV  89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1   thirty (30) days ago and remain unpaid, and these claims total approximately seven hundred and

2   six thousand dollars.

3       56.    Western and Access has wrongfully failed and refused to pay the outstanding

4   claims described in the preceding paragraph from the collateral reserve account.

5       57.    There exists no justification for Western's and Access' failure and refusal to pay

6   reimbursement claims which are now more than thirty (30) days old.

7       58.    The remaining 330 claims which have been submitted to Western and Access but

8   which are less than thirty days old have a value of $547,638.84 and remain unpaid and

9   outstanding.

10      59.    NADC and NADS continue to submit approved and complete reimbursement

11  claims to Western and Access on a regular basis and expect to continue to do so for at least

12  several more years.

13      60.    Several written demands, and many oral demands, have been made upon Western

14  and Access that they immediately pay all outstanding reimbursement claims which are more than

15  thirty (30) days old, and that they provide adequate assurances of performance with respect to all

16  other reimbursement claims. A true and correct copy of a demand letter to Western and Access

17  from counsel to NADC and NADS dated August 5, 2011 is attached hereto as Exhibit 9 and is

18  incorporated herein by reference.

19      61.    In addition, the August 5, 2011 letter also demanded that Western and Access

20  confirm in writing that the collateral reserve account is a separate account held in a fiduciary

21  capacity solely for the benefit of NADC and its member dealers and their customers and that

22  Western and Access have never used any of the funds in the collateral reserve account for any

23  purpose other than claim reimbursements under the Program. The August 5, 2011 letter also asks

24  for documentation showing where the collateral reserve account is held and the current balance.

25      62.    Western, through its general counsel, Matthew Dion, has requested and received

26  several extensions of time to respond to the August 5, 2011 demand letter, with the last extension

27  expiring on August 29, 2011.

28

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

63.    Western and Access have failed to respond, in any substantive manner, to the August 5, 2011 demand letter.

64.    Western and Access continue to wrongfully withhold payments on approved and completed reimbursement claims which were submitted to them in excess of thirty (30) days ago.

65.    Western and Access have failed and refused to provide adequate assurances of performance with respect to any other reimbursement claims that have been submitted for payment out of the collateral reserve account or with respect to any future claims.

66.    Western and Access have failed and refused to confirm that the collateral reserve account is a segregated account held in a fiduciary capacity and that they have never used the funds contained in the collateral reserve account for any purpose other than payment of approved reimbursement claims.

67.    On information and belief, Western and Access, together with their officers, directors and owners, have misappropriated, or allowed the misappropriation of, funds from the collateral reserve account and have wrongfully commingled the collateral reserve funds with other funds.

68.    On information and belief, Western and Access have wrongfully, and without any authority or right, used collateral reserve account funds to continue to operate Western and Access by purchasing worthless Western Insurance Company securities or stock, thereby allowing Western and Access to use those funds to pay other creditors and general business expenses.

69.    Bankruptcy counsel for Access, Steve Harris, represented to counsel for NADC that Mr. Harris believes that Access has only approximately $600,000 in cash collateral.

## FIRST CLAIM FOR RELIEF
### (Accounting)

70.    NADC incorporates herein by reference and realleges as if fully set forth the allegations contained in Paragraphs 1-69, above herein.

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV  89504-0281
Tel: (775) 786-5000    Fax: (775) 786-1177

71.     Access has exclusive possession and control of the collateral reserve account and is, along with Western responsible to administer, maintain and protect the collateral reserve account.

72.     Access holds the funds in the collateral reserve account in a fiduciary capacity.

73.     On information and belief, Access, and its officers, directors and owners, has wrongfully commingled and misappropriated, or allowed the misappropriation of funds from the collateral reserve account.

74.     Access has deliberately, persistently, repeatedly and wrongfully breached the Western Bond and agreement concerning the collateral reserve account, as well as its fiduciary duties, by refusing and failing to pay approved claims from the collateral reserve account.

75.     The failure to pay approved claims is intentional and without any justification in law or fact.

76.     NADC cannot ascertain the whereabouts of the funds paid to Western and Access to be deposited into collateral reserve account or ascertain the transactions involving those funds without a full, complete and accurate accounting of all accounts which contain collateral reserve funds from Western and Access.

77.     NADC has demanded that Western and Access provide it with a full accounting of all funds that have been received in the collateral reserve account or paid out of that account and an accounting of where the remaining collateral reserve account funds are located.

78.     Despite demand for an accounting from NADC and NADS, Western and Access wrongfully refuse to produce the books and records of the collateral reserve account or provide a full, complete and accurate accounting of the collateral reserve account.

79.     NADC is entitled to a full, complete and accurate accounting of the collateral reserve account, including a list of all deposits thereto, all payments or transfers made from the account and a full accounting of all transactions involving funds deposited with Western and Access as reserve funds.

80.     NADC has been required to retain the services of Jones Vargas to prosecute this action, and is entitled to its reasonable attorneys' fees.

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

81.     NADC incorporates herein by reference and realleges as if fully set forth the allegations contained in Paragraphs 1-80, above herein.

82.     The Western Bond is a valid and existing contract.

83.     NADC has performed, or has been excused from performing, all of its obligations under the terms of the Western Bond.

84.     Access is in default of its contractual obligations under the Western Bond, including, without limitation, the obligation to pay reimbursement claims from the collateral reserve account within thirty (30) of receipt of complete and verified claims.

85.     Access is in default of its contractual obligations with respect to the collateral reserve account, which it agreed to maintain, administer, control, and keep segregated as the property of NADC and its member dealers and use solely for the purpose of paying valid reimbursement claims submitted by NADC and NADS on behalf of the member dealers.

86.     Based on their breach of their current contractual obligations, NADC made demand upon Western and Access for adequate assurances of future performance.

87.     Western and Access have failed and refused to provide adequate assurances of future performance.

88.     NADC has incurred damages as a result of the aforesaid breaches, including loss of business and reputation, claims against it and its member dealers from customers whose reimbursement refunds are being wrongfully withheld by Western and Access and loss of funds in the collateral reserve account.

89.     NADC has been required to retain the services of Jones Vargas to prosecute this action, and is entitled to its reasonable attorneys' fees.

## THIRD CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)

90.     NADC incorporates herein by reference and realleges as if fully set forth the allegations contained in Paragraphs 1-89, above herein.

1    91.    In their capacity as the entities that exclusively maintain, administer and control

2  the collateral reserve account Western and Access owe NADC and its dealer members a fiduciary

3  duty with respect to the collateral reserve account.

4    92.    Defendant Access knew that NADC relied upon it to properly maintain,

5  administer and protect the collateral reserve account and intended that NADC place reliance on

6  them.

7    93.    A fiduciary or confidential relationship existed between NADC and Access.

8    94.    As a result of the parties' relationship, Access was entrusted by NADC and its

9  member dealers with approximately twenty million dollars in reserve funds to be held in the

10  collateral reserve account, and, with respect to those funds, Access was required to place NADC

11  and its member dealers' interests before its own.

12    95.    Access intentionally failed to act in good faith and solely for the benefit of NADC

13  and its member dealers in all matters related to the collateral reserve account.

14    96.    Access breached its fiduciary duties by failing to properly maintain, administer

15  and protect the collateral reserve account and, on information and belief, by wrongfully

16  misappropriating, or allowing the wrongful misappropriation of, funds from the collateral reserve

17  account.

18    97.    NADC has incurred damages as a result of the aforesaid breach, including loss of

19  business and reputation, claims against it and its member dealers from customers whose

20  reimbursement refunds are being wrongfully withheld by Access and loss of funds held in the

21  collateral reserve account.

22  ///

23    98.    The conduct of Access in failing to protect the collateral account and, on

24  information and belief, misappropriating, or allowing the misappropriation of collateral reserve

25  account funds, was willful, wanton, malicious, reckless and outrageous.

26    99.    NADC is entitled to an award of actual and punitive damages as a result of the

27  willful, wanton, malicious, reckless and outrageous conduct of Access as aforesaid.

28

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1      100.   As a direct and proximate result of the breach of Access, NADC has and will

2 continue to suffer harm and other damages.

3      101.   NADC has been required to retain the services of Jones Vargas to prosecute this

4 action, and is entitled to its reasonable attorneys' fees.

5                          **FOURTH CLAIM FOR RELIEF**
                (**Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**)

6

7      102.   NADC incorporates herein by reference and realleges as if fully set forth the

allegations contained in Paragraphs 1-101, above herein.

8

9      103.   An implied covenant of good faith and fair dealing exists under Nevada law with

10 respect to every contract, including, without limitation, those between an insurance company and

its insureds.

11

       104.   A fiduciary or confidential relationship exists between NADC and Access.

12

13     105.   Access has breached of the covenant of good faith and fair dealing by failing to

14 properly maintain, administer and protect the collateral reserve account, by failing to pay

reimbursement claims as required under the Western Bond, and by, on information and belief,

15 misappropriating funds or allowing the misappropriation of funds from the collateral reserve

16 account.

17     106.   NADC has performed or has been excused from performing all of its obligations

18 under the Western Bond and the agreement between the parties.

19

20     107.   NADC and its member dealers have been damaged by Access' breach of

the covenant of good faith and fair dealing and its bad faith.

21

22     108.   Access' conduct as aforesaid was willful, wanton, malicious, outrageous

and in bad faith, entitling NADC to recover punitive damages.

23

24     109.   NADC has been required to retain the services of Jones Vargas to prosecute this

action, and is entitled to its reasonable attorneys' fees.

25

26                          **FIFTH CLAIM FOR RELIEF**
                                    **Conversion**

27     110.   NADC incorporates herein by reference and realleges as if fully set forth the

28 allegations contained in Paragraphs 1-109, above herein.

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

1676349.doc                          **Page 14 of 21**

111.   On information and belief Western and Access converted and misappropriated funds in the collateral reserve account.

112.   Western and Access had no legal or equitable right or interest in or to funds in the collateral reserve account.

113.   Western and Access have agreed to release funds from the collateral reserve account upon presentation of approved reimbursement claims but have wrongfully refused to do so and such refusal constitutes a conversion of those funds.

114.   Western's and Access' conversion of funds from the collateral reserve account is wrongful as a matter of law, and constitutes a distinct act of dominion and control over NADC's personal property, in denial of NADC's title in such personal property and in derogation, exclusion and defiance of NADC's rights to that property.

115.   NADC has the right to immediate possession of all of the funds that should be remaining in the collateral reserve account.

116.   Western and Access have wrongfully interfered with NADC's right to immediate possession of the funds in the collateral reserve account.

117.   NADC has sustained damages as a result of the conversion and misappropriation of funds from the collateral reserve account.

118.   Western's and Access' conversion of funds from the collateral reserve account was willful, wanton, malicious, outrageous and in bad faith.

119.   NADC is entitled to an award of actual and punitive damages as a result of the willful, wanton, malicious and outrageous conduct of the defendants as aforesaid.

120.   NADC has been required to retain the services of Jones Vargas to prosecute this action, and is entitled to its reasonable attorneys' fees.

### SIXTH CLAIM FOR RELIEF
### (Embezzlement - NRS 683A.400)

121.   NADC incorporates herein by reference and realleges as if fully set forth the allegations contained in Paragraphs 1-120, above herein.

Jones Vargas
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

122. Access is a producer of insurance as that term is defined under Chapter 683A of the Nevada Revised Statutes.

123. Western and Access received funds from NADC, its subsidiaries and member dealers in a fiduciary capacity.

124. Access and its principals, officers, directors and employees were responsible for the protection of those funds and maintained exclusive control over those funds for Western and Access.

125. Pursuant to NRS 683A.400 money of others received under any insurance policy is held and received by the person receiving it in a fiduciary capacity and any person who diverts or appropriates such fiduciary money to his or her own use is guilty of embezzlement.

126. On information and belief, Access diverted and/or misappropriated funds from the collateral reserve account.

127. On information and belief, the funds that were misappropriated or diverted were used to continue the businesses of both Western and Access.

128. Access is guilty of embezzlement with respect to collateral reserve account funds that have been, on information and belief, misappropriated or diverted under its watch.

129. The actions of Access as aforesaid were willful, wanton, malicious and outrageous

130. NADC and its member dealers have incurred losses and damages as a result of the embezzlement.

131. NADC is entitled to recover punitive damages based on the willful, wanton, malicious and outrageous conduct of the defendants.

132. NADC has been required to retain the services of Jones Vargas to prosecute this action, and is entitled to its reasonable attorneys' fees.

## SEVENTH CLAIM FOR RELIEF
### (Fraudulent Transfers)

133. NADC incorporates herein by reference and realleges as if fully set forth the allegations contained in Paragraphs 1-132, above herein.

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

134.   By reason of any misappropriation or diversion of funds from the collateral reserve account by Western and Access NADC is a creditor of Access.

135.   Access made unauthorized transfers out of the collateral reserve account with actual intent to hinder, delay or defraud NADC.

136.   On information and belief, there was not reasonably equivalent value given by any recipient for any unauthorized diversion or misappropriation of funds out of the collateral reserve account.

137.   NADC is informed and believes and based thereon alleges that Access was insolvent at the time it made unauthorized transfers out of the collateral reserve account or it became insolvent as a result of such transfers.

138.   Western and Access knew at the time that any unauthorized diversions or misappropriations may have been made that the funds in the collateral reserve account belonged to NADC and its member dealers and could only be used to pay valid reimbursement claims.

139.   On information and belief, any unauthorized diversions or misappropriations out of the collateral reserve account were actively concealed by Western and Access with the actual intent to defraud NADC and its member dealers.

140.   On information and belief, any unauthorized diversions or misappropriations out of the collateral reserve account were made because Western and Access did not have inadequate working capital and were in financial distress.

141.   On information and belief, the parties who received any unauthorized diversions or misappropriations out of the collateral reserve account, whose identities are currently unknown to NADC, were aware, or in the exercise of reasonable diligence should have been aware, that they had no right, title or interest in or to the collateral reserve funds.

142.   On information and belief, neither Western nor Access, or any parties who received any unauthorized diversions or misappropriations out of the collateral reserve account acted in good faith in connection with their receipt of collateral reserve funds.

143.   NADC has been required to retain the services of Jones Vargas to prosecute this action, and is entitled to its reasonable attorneys' fees.

JONES VARGAS
300 East Second Street, Suite 1510 · P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

## EIGHTH CLAIM FOR RELIEF
### (Unjust Enrichment)

144.   NADC incorporates herein by reference and realleges as if fully set forth the allegations contained in Paragraphs 1-143, above herein.

145.   At all times material hereto, Access knew that it had no right, title or interest in or to any of funds in the collateral reserve account.

146.   At all times material hereto, Access was aware, or in the exercise of reasonable diligence should have been aware, that it was not entitled to receive or use any of the funds contained in the collateral reserve account.

147.   On information and belief, in violation of their contractual and fiduciary duties, Access commingled the funds in the collateral reserve account with other accounts and used the collateral account reserve funds for its own purposes or to benefit other clients or insureds who were not entitled to use or receive funds from the collateral reserve account.

148.   Western and Access are under a duty to return any collateral account funds used for improper purposes to NADC but have failed to do so.

149.   NADC and its member dealer are the rightful owner of any monies which may have been misappropriated or diverted from the collateral reserve account.

150.   It is unfair, inequitable and unjust to allow Western and Access to retain the benefit any funds that may have been misappropriated or diverted from the collateral reserve account.

151.   NADC has been required to retain the services of Jones Vargas to prosecute this action, and is entitled to its reasonable attorneys' fees.

## NINTH CLAIM FOR RELIEF
### (Constructive Trust)

152.   NADC incorporates herein by reference and realleges as if fully set forth the allegations contained in Paragraphs 1-151, above herein.

153.   NADC is the rightful owner of any funds held in the collateral reserve account, or any funds improperly transferred out of that account to other accounts or entities controlled by Western, Access or their respective owners, managers, members, officers and directors.

154.    A fiduciary or confidential relationship exists between NADC and Access.

155.    At all times material hereto, Access knew that it had no right, title or interest in or to any of funds in the collateral reserve account.

156.    It is unfair, inequitable and unjust to allow Access to retain the benefit any funds that may have been misappropriated or diverted from the collateral reserve account.

157.    The imposition of a constructive trust over any funds held in the collateral reserve account, or any funds improperly transferred out of that account to other accounts or entities controlled by Western, Access or their respective owners, managers, members, officers and directors is essential to the effectuation of justice.

## TENTH CLAIM FOR RELIEF
### (Declaratory Relief)

158.    NADC incorporates herein by reference and realleges as if fully set forth the allegations contained in Paragraphs 1-157, above herein.

159.    Any and all funds contained in the collateral reserve account, or any funds improperly transferred out of that account to other accounts or entities controlled by Western, Access or their respective owners, managers, members, officers and directors clearly belong to NADC because those funds were placed in a trust account that Access and Western hold in a fiduciary capacity.

160.    Any and all funds contained in the collateral reserve account, or any funds improperly transferred out of that account to other accounts or entities controlled by Western, Access or their respective owners, managers, members, officers and directors, do not belong to Access or Western and have never belonged to Access or Western, and Access and Western had not legal right to use or dispose of such funds.

161.    Any and all funds contained in the collateral reserve account, or any funds improperly transferred out of that account to other accounts or entities controlled by Western, Access or their respective owners, managers, members, officers and directors, are not property of the bankruptcy estate of Access, and instead remain the property of NADC.

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177

162.    By reason of the foregoing, a controversy exists between NADC and Access as to the parties' respective rights and obligations related to any and all funds contained in the collateral reserve account, or any funds improperly transferred out of that account to other accounts or entities controlled by Western, Access or their respective owners, managers, members, officers and directors.

163.    This Court is authorized to grant declaratory judgments.

164.    A judgment of this Court should be entered wherein all rights and liabilities of the parties with respect to said controversy, including the rights and liabilities of the parties related to any and all funds contained in the collateral reserve account, or any funds improperly transferred out of that account to other accounts or entities controlled by Western, Access or their respective owners, managers, members, officers and directors, are decided and fully adjudicated.

165.    NADC has been required to retain the services of Jones Vargas to prosecute this action, and is entitled to reasonable attorneys' fees.

WHEREFORE, NADC respectfully requests that judgment be entered in its favor and against Access:

1.    In the form of an order directing Access to provide, at its own expense, within fifteen (15) days of the date of the order, a full, complete and accurate accounting, performed or verified by an independent certified public accounting firm, of all funds received by them as reserve funds, identifying all transactions involving said funds and all accounts in which said funds are located;

2.    For damages in the amount of all funds misappropriated from the collateral reserve account;

3.    For all other damages, direct and incidental, arising from the misappropriation as aforesaid, in an amount to be proven at trial;

4.    For punitive damages in an amount to be proven at trial;

5.    In the form of an order requiring that any and all inappropriate transfers out of the collateral reserve account to other accounts or entities controlled by Western, Access or their respective owners, managers, members, officers and directors be set aside to the extent necessary

1    to satisfy NADC's claims with respect to the collateral reserve fund.

2        6.     In the form of an order imposing a constructive trust over any funds held in the

3    collateral reserve account, or any funds improperly transferred out of that account to other

4    accounts or entities controlled by Western, Access or their respective owners, managers,

5    members, officers and directors;

6        7.     For interest, costs and attorneys' fees; and

7        8.     Any such other and further relief as is this Court deems just and proper.

8    DATED this 12th day of September, 2011.

9

JONES VARGAS

10

11

BRIAN R. IRVINE, ESQ,

12    JUSTIN J. BUSTOS, ESQ.

13    *Attorneys for Creditor,*
*North American Dealer Co-Op.*

JONES VARGAS
300 East Second Street, Suite 1510 - P.O. Box 281
Reno, NV 89504-0281
Tel: (775) 786-5000   Fax: (775) 786-1177