BRIAN R. IRVINE, ESQ.
Nevada Bar No. 7758
WAYNE KLOMP, ESQ.
Nevada Bar No. 10109
JUSTIN BUSTOS, ESQ.
Nevada Bar No. 10320
JONES VARGAS
300 East Second Street, Suite 1510
P.O. Box 281
Reno, NV 89504
Telephone: 775-786-5000
Facsimile: 775-786-1177
Email: birvine@jonesvargas.com
Email: wklomp@jonesvargas.com
Email: jbustos@jonesvargas.com

*Attorneys for Plaintiff*
*North American Dealer Co-Op.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| NORTH AMERICAN DEALER CO-OP, <br><br> Plaintiff, <br><br> v. <br><br> DICK L. ROTTMAN; JEFFREY P. SHAFFER; JANICE LYNN BOWMAN, CAROL B. INGALLS; BRADLEY A. PEARCE, R. SCOTT ROTTMAN, individuals; A AND H INSURANCE, INC., a Nevada corporation; WESTERN THRIFT & LOAN, a Nevada corporation, and John Does I through XX, Doe Corporations I through XX and Doe Organizations I through XX, <br><br> Defendants. | Case No.   3:11-cv-00698-LRH-VPC <br><br> **REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY PREJUDGMENT WRIT OF ATTACHMENT SHOULD NOT ISSUE** |

Plaintiff NORTH AMERICAN DEALER CO-OP ("NADC"), responds to the opposition filed by Defendants to NADC's motion for an order directing defendants to show cause why a prejudgment writ of attachment should not issue. This reply is based on Chapter 31 of the Nevada Revised Statutes, the exhibits and affidavits attached to the motion, the pleadings and papers on file herein, and any other evidence the court may wish to consider.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

The facts of this case are not difficult. NADC forwarded $17,000,000 to Western Insurance Company ("Western") and/or Access insurance Services ("Access") to hold in a fiduciary capacity of which at least $8,250,000 should remain available. Both Western and Access were controlled by the Defendants. The money is now, apparently gone. When the fact that the money is missing is considered with the repeated representations by the individual Defendants that the money was being held in a fiduciary account in trust for NADC, only one conclusion can be drawn—the money is unaccounted for because of Defendants actions, inactions, and misrepresentations. The misappropriation by Defendants of over $8.2 million is justifiable grounds upon which this Court can issue a prejudgment writ of attachment.

The causes of action asserted by NADC are not, as Defendants assert, solely based upon a theory of piercing the corporate veil. (Opp'n to Mot. at 9:2-6, Dkt. #23). Rather NADC has asserted affirmative claims against the Defendants for fraud, misrepresentation, embezzlement, conversion, and conspiracy. Although NADC has alleged sufficient facts to pierce the corporate veil, NADC need not pierce the corporate veil to assert liability for these claims for relief. Because the facts and evidence before this Court demonstrate that NADC is likely to succeed in its claims and because there is an apparent and obvious risk that the Defendants will continue to misappropriate funds making collection of a judgment difficult if not impossible, NADC is entitled to a prejudgment writ of attachment as set forth in its motion for order to show cause.

NADC therefore requests that this Court enter an order to show cause why a prejudgment writ of attachment should not issue which complies with NRS 31.024. A proposed order is attached hereto as **Exhibit 1**.

///
///
///
///
///

## II. Legal Analysis

### A. A prejudgment writ may issue in tort claims and where a contract is tainted with fraud.

Chapter 31 of the Nevada Revised Statutes governs the award of a prejudgment writ of attachment and the grounds upon which a writ may be issued. NRS 31.013. The Nevada statute contemplates that a writ of attachment will issue: (1) in contract claims; (2) where attachment is allowed by law; and (3) in "any case" where extraordinary circumstances exist. NRS 31.013. In a decision made after surveying several state's attachment statutes, the Tenth Circuit agreed that in Oklahoma, "the obligation or liability must either arise from contract or from a wrong growing out of a contract tainted with fraud." Investors Royalty Co. v. Market Trend Survey, 206 F.2d 108, 110-11 (10th Cir. 1953). The statute analyzed in that case was much more restrictive than the Nevada statute which provides that the prejudgment writ shall issue in "any case" where circumstances so warrant. The Nevada statute is clear on its face that a prejudgment writ may issue in tort claims and contract claims alike. However, no case has determined when "extraordinary circumstances" exist for issuance of a writ of attachment under Chapter 31.

### B. Plaintiff is entitled to a prejudgment writ based upon the money due under the contract tainted with fraud.

A valid contract existed between Western and NADC pursuant to which Western and/or Access was obligated to hold funds forwarded by NADC in a fiduciary capacity. The officers and directors of Western and Access represented on many occasions that the money was held in a segregated, collateral reserve account in trust for NADC. (Mot. for Order at 4:12-27, Dkt. #16). Those representations were false when made and Defendants have made no attempt to deny the falsity of the representations concerning the nature collateral reserve account.

However, even if the misrepresentations had not been made and relied upon, the fact remains that money held by Western and Access in a fiduciary capacity is unaccounted for. Those who had direct control and access to the collateral reserve account have depleted the account. While NADC has not yet conducted full discovery on the current whereabouts of all $8.2 million, the individual Defendants were those with authority and direct control over the account. No other entity could or did take the money and Defendants have not bothered to deny that they were not

responsible for the account. The contract between Western and NADC appears to be nothing more than a sham perpetrated by the Defendants to obtain control and ownership of more than $8.2 million.

For example, defendants have testified that they diverted at least $4 million of the funds to purchase stock in Western. (Mot. for Order at 7:1-3 & Ex. 11, Dkt. #16). That is an unauthorized diversion of $4 million which Defendants represented was held in trust and in a fiduciary capacity. As additional evidence that the contract was tainted with fraud, Access filed bankruptcy and Western is in liquidation and neither proceeding has listed the more than $8.2 million as existing in the collateral reserve account. The money which belonged to NADC appears to have been misappropriated by the officers and directors of Western and Access.

### C. Extraordinary circumstances exist in this case because Defendants have not denied and cannot deny that the money to be held in the collateral reserve account is depleted; and that the Defendants depleted the account.

NADC has asserted fraud-based causes of action against the Defendants for depleting a collateral reserve account which was to be held in a fiduciary capacity by the entities over which the Defendants had ownership and control. Plaintiff has clearly, and not in a conclusory fashion, pled and supported facts regarding the nature of the collateral reserve account held by Western and Access. Despite the allegations in the complaint, the evidence and direct statements attached to the motion for attachment, and the insolvency of entities which were to have held money for NADC, Defendants have not produced a single affidavit or document disputing the facts of this case as represented by NADC. Rather, Defendants have produced affidavits asserting that no contract existed between NADC and the Defendant entities herein.

Missing from Defendants' opposition to the motion for order to show cause why a prejudgment writ of attachment should not issue is: (1) any distinct evidence or documentation showing any balance in the collateral reserve account; (2) a denial of wrongdoing by the Defendants with respect to the missing $8.2 million; (3) documents or testimony demonstrating that Defendants did not perpetrate a fraud against NADC; or (4) documents or testimony that Defendants were otherwise the victims of a fraud perpetrated against them. The facts which have been established by the documents and affidavits are as follows: (1) the collateral reserve account

1 should have a balance of $8.25 million (Aff. of H. Bailey, Ex. 2 to Mot. for Order, Dkt. #16); (2)
2 the entities controlling the collateral reserve account are bankrupt (Opp'n to Mot. at ; (3)
3 Defendants were the individuals and entities who could have accessed the $8.25 million; (4) there
4 is no record of a collateral reserve account in the bankruptcy filings of Access, the entity which
5 held the collateral reserve account; (5) Defendant Dick Rottman transferred at least $4 million out
6 of the collateral reserved funds to Western; (6) Defendants including Scott Rottman made a series
7 of loans from funds held by Access through Western Thrift & Loan; and (7) NADC is out $8.25
8 million as a direct result of Defendants' actions.

Moreover, as indicated in the motion for order to show cause, NADC has submitted at least 1516 claims for approved claims to Western for payment from the collateral reserve account totaling more than $2.5 million. (Mot. for Order at 6:8-11 & Ex. 1, Dkt. #16). Despite the clear obligation to pay, Defendants remain silent as to the obligation to pay. Defendant's silence and refusal to pay or respond to NADC's demands is additional evidence that the collateral reserve account is depleted and that Defendants are responsible for the loss.

It has become abundantly clear is that Defendants have depleted the collateral reserve account, authorizing and effecting the removal of funds which never belonged to either Western or Access. Rather than attempt to deny clear misrepresentations they have made, Defendants instead rely upon the illusion that Western and Access have simply "hit hard financial times . . . ." (Opp'n to Mot. at 11:10). Even if that statement were true, the insolvency of Western and Access are not issues here other than to show that the individual Defendants depleted thos entities for their own benefit and to the detriment of NADC. The crux of this case is that the Defendants took the money held in a fiduciary capacity. The money never belonged to Western or Access. The collateral reserve account was to operate as a bank account would. Absent the undeniable actions of the Defendants, the money in the collateral reserve account would still be available to NADC regardless of the insolvency of Western and Access—the money was <u>never</u> an asset of those entities.

27 ///

28 ///

**D.  Defendants have not produced any admissible or relevant evidence against the conclusion that any judgment may not be satisfied if a prejudgment writ does not issue.**

An affidavit supporting issuance of a prejudgment writ of attachment may be based upon the presumption of fraud.  Bowers v. Beck, 2 Nev. 139 (1866).  In Bowers, the defendant indicated to the plaintiff that he was going to divest himself of the property upon which plaintiff would seek to recover any judgment.  Id.  That was sufficient for the court to award a prejudgment writ of attachment.

In this case, Defendants have already succeeded in making $8.2 million disappear and have provided absolutely no explanation for the disappearance of the money other than that certain entities have "fallen on hard times."  It is not a stretch to believe that any assets owned or controlled by the Defendants will likewise fall on hard times rendering any judgment which NADC obtains uncollectable.

A different scenario might unfold if Western and Access owed NADC the $8.2 million pursuant to a promissory note.  In that instance, the money would not have belonged to NADC at the time Western and Access filed bankruptcy.  This case is extremely different.  The collateral reserve account was money which belonged to NADC and held in a fiduciary capacity by Western and Access.  The money was not proceeds from sales or income generated by Western.  The money was not even an investment fund for Western to manage.  The collateral reserve account was to be segregated from all other funds and held by Western but owned by NADC.  The Defendants have virtually stolen that money.  This is not a case where the money was lost due to a bad investment or a company went broke as a result of the economy.  Rather the funds were systematically depleted by the Defendants in a manner that was contrary to their representations and contrary to the nature of the funds.

There is ample support for a presumption of fraud in this case and the notion that Defendants will continue to run their companies in such a manner that ultimately nothing will be left for NADC or any other victim to collect.

///

///

### E. NADC is likely to succeed on the merits of its claims.

NADC has asserted claims against Defendants for conversion, embezzlement, negligent misrepresentation, fraud, fraudulent transfers, breach of fiduciary duty, civil conspiracy, and constructive trust. In their opposition, Defendants iterate and reiterate that that Plaintiff's claims are "conclusory and redundant" and that the allegations and supporting documents attached to the motion are an insufficient basis upon which to base a writ of attachment. (E.g., Opp'n to Mot. at 12:21, Dkt. #23). Defendants, however, ignore the evidence cited in the First Amended Complaint and attached to the motion for order to show cause wherein NADC has specifically outlined misrepresentations made by individual Defendants, insider loans granted to the officers and directors of Western Thrift & Loan, and the most obvious fact—$8.2 million of NADC's money controlled by the Defendants is unaccounted for.

Shaffer nonchalantly testified recently that $4 million was transferred from the account held by Access to Western to purchase Western stock. That is $4 million of NADC's money used by Defendants to purchase stock *in their own company*. (Mot. for Order at 7:1-3, Dkt. #16). Access also purchased stock in Western Thrift & Loan and the money was then used to grant loans to the officers of the banking entity including Shaffer and Scott Rottman. (Id. at 7:6-17).

Defendants are correct in stating that NADC does not have a clear understanding of where all of the $8.2 million has gone—Defendants have refused to produce this information in response to demands made by NADC for an accounting. However, despite a lack of details, Plaintiff is still likely to succeed on the merits of its claims for fraud, misrepresentation, conversion, and embezzlement for the simple fact that NADC had $8.2 million and that money has been converted due to the actions and inaction of the Defendants.

### III. Conclusion

The facts of this case are straightforward. NADC sent money to Western and Access to hold in a fiduciary capacity. Of the $8.25 million balance remaining, most or all of the money has been misappropriated by the Defendants who have raised no legitimate defense to the allegations and documented support provided by NADC in support of its motion for a prejudgment writ of attachment. Defendants have demonstrated their willingness and ability, given the opportunity, to

deprive others of their assets and there is no reason to believe their behavior will change given the facts and extraordinary circumstances of this case. An order to show cause should be issued and a hearing held to determine whether a prejudgment writ of attachment should issue.

DATED this 22nd day of December, 2011.

JONES VARGAS


\_\_/s/ Wayne Klomp_____
BRIAN R. IRVINE, ESQ,
WAYNE KLOMP, ESQ.
JUSTIN BUSTOS, ESQ.
300 East Second Street, Suite 1510
P.O. Box 281
Reno, NV 89504
Telephone: 775-786-5000
Facsimile: 775-786-1177
Email: birvine@jonesvargas.com
Email: wklomp@jonesvargas.com

*Attorneys for Plaintiff,*
*North American Dealer Co-Op.*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of JONES VARGAS, and that on this date, pursuant to FRCP 5(b), I am serving a true and correct copy of the attached **REPLY IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY PREJUDGMENT WRIT OF ATTACHMENT SHOULD NOT ISSUE** on the party(s) set forth below by:

| | |
|---|---|
| _____ | Placing an original or true copy thereof in a sealed envelope placed for collection and mailing in the United States Mail, at Reno, Nevada, postage prepaid, following ordinary business practices |
| _____ | Certified Mail, Return Receipt Requested |
| _____ | Via Facsimile (Fax) |
| _____ | Placing an original or true copy thereof in a sealed envelope and causing the same to be personally Hand Delivered |
| _____ | Federal Express (or other overnight delivery) |
| ___XX___ | By Notice of Electronic Filing via the CM/ECF system as maintained by the Court Clerk's Office |

as follows:

Richard L. Elmore: relmore@hollandhart.com; btoriyama@hollandhart.com; carnold@hollandhart.com cpulsipher@hollandhart.com; gsilva@hollandhart.com; jnickerson@hollandhart.com; k_oriley@hollandhart.com; lgray@hollandhart.com; renofedecf@hollandhart.com

DATED this 22nd day of December, 2011.

    /s/ Michell L. Nobach  
An employee of JONES VARGAS